KRONENBERG *v.* WHALE.

*Negligence—Automobile collides with another parked at night without lights—Driver blinded by headlights of oncoming automobile—Pleading exercise of care by driver, sufficient, when—Evidence that front lights not lighted competent, when—Municipal ordinance requiring display of lights pleaded and proved—Amendment of pleadings to conform to evidence, permitted during trial—Section 11363, General Code—Errors in admitting evidence cured by amendment of pleadings—Permitting amendment after verdict, not abuse of discretion—Charge to jury upon absence of lights not prejudicial, when—Interrogatories thereon not submitted by counsel—Contributory negligence in issue and charge thereon not erroneous, when—Negligence of driver not imputed to passenger—Measure of damages for future injuries—Use of words "reasonably be expected to suffer" not erroneous—Judgment not reversible for error not prejudicial to complainant—Verdict and judgment not manifestly against weight of evidence, when*

*—Mistake, misapprehension, bias or disregard of duty by jury, necessary, when.*

1. In action for injuries sustained when plaintiff's car collided with defendant's car, parked without lights, petition alleging that driver of plaintiff's car was exercising reasonable care to avoid collision with oncoming car, glare of whose lights temporarily blinded him when defendant's car was struck, *held* to state cause of action.

2. In action for injuries when plaintiff's car struck rear of defendant's car while parked without lights, allegation that defendant failed to give any notice or warning to persons traveling on street that his automobile was standing on street in a dark place *held* to warrant court in permitting evidence as to front lights and instructing jury thereon, especially where issue as to front lights arose from evidence of defendant himself.

3. In action for injuries sustained when plaintiff's car collided with rear of defendant's car, parked without lights, in which ordinance requiring motor vehicles after dark to display both front and rear lights was pleaded and introduced, question of front lights, as well as rear lights, became proper testimony, as bearing on the *res gestae* in the case.

4. Amendments can be made during a trial, so that pleadings may conform to the evidence.

5. In action for injuries sustained by plaintiff when automobile collided with rear of parked automobile without lights, any error in injecting issue of defendant's failure to have front lights lit, because not in issue, *held* cured, when court, in proper exercise of discretion, under Section 11363, General Code, permitted amendment of petition to conform to proof.

6. In action for injuries sustained by plaintiff when automobile collided with rear of defendant's automobile parked without lights, permitting, after verdict, amendment of petition to conform to proof that front lights on defendant's automobile were not lit, as required by ordinance, *held* not an abuse of discretion.

7. In action for injuries sustained when plaintiff's automobile collided with defendant's parked car without lights, any error in charging jury, so as to make an issue of front

lights, in that such issue did not appear in pleadings or evidence, *held* not prejudicial, where it appeared that question was under consideration by jury, and defendant submitted no interrogatories to jury on such issue.

8. In action for injuries sustained by plaintiff when his automobile collided with defendant's car, parked without lights, any error of court in making contributory negligence an issue, and in charging jury thereon, *held* not prejudicial, where defendant was not required to prove that issue.

9. Though pleadings do not raise question of contributory negligence, if it becomes issue by virtue of evidence, court must charge thereon.

10. A person, riding as passenger and having no authority and control, and not exercising same, cannot be held responsible for negligence imputed to him.

11. In action for injuries sustained in automobile collision, in which plaintiff, having no authority or control and not exercising same, could not be held responsible for negligence imputed to him, court, as part of *res gestae*, and as descriptive of character of plaintiff, as contradistinguished from character of driver, properly made contributory negligence an issue, and charged jury thereon.

12. In action for injuries sustained when plaintiff's automobile collided with defendant's automobile, parked without lights, verdict for plaintiff *held* not manifestly against the evidence.

13. Reviewing court should not reverse judgment because verdict is against weight of evidence, unless it is so clearly unsupported by weight of evidence as to indicate some misapprehension or mistake, or bias by jury, or a willful disregard of duty.

14. Judgment will not be reversed for an erroneous charge, not prejudicial to party complaining thereof.

15. Charge on measure of damages as to future injuries, by using words "will reasonably be expected to suffer in the future," instead of "reasonably certain to follow," *held* not erroneous; "expect" meaning to look for (mentally), etc.

(Decided July 6, 1925.)

Error: Court of Appeals for Cuyahoga county.

*Messrs. Rothenberg, McMorris & Smith,* for plaintiff in error.

*Messrs. Cline & Patterson,* for defendant in error.

SULLIVAN, J. This cause comes into this court on error from the court of common pleas of Cuyahoga county, and it is sought to reverse a judgment of ten thousand dollars found in favor of Herbert Whale, the plaintiff below, against Louis Kronenberg, the defendant below. Throughout this opinion the parties will be referred to as they stood in the court below.

On or about the 21st day of January, 1924, at about 6:30 p. m., the plaintiff, in the company of others, was riding south on East 111th street, Cleveland, Ohio, in an automobile driven by one Harry Whale, plaintiff's brother. The night was dark, and at a certain point on the west side of East 111th street the defendant had parked his automobile. There is credible evidence in the record tending to show that there were no lights in front or in the rear of defendant's automobile, contrary to the provisions of Sections 2267 and 2267a of the revised ordinances of the city of Cleveland, in due force at that time which provided as follows:

"Section 2267: Each and every motor vehicle traveling along or standing upon the public street or highways of the city shall display, during the period from thirty (30) minutes after sunset to thirty (30) minutes before sunrise, a red light and a white light on the rear thereof, and two (2) white lights on the front thereof, one on each side of the car, the rays of which white light on the rear thereof shall shine upon and illuminate each and every

part of the license number borne upon such motor vehicle, and the light of which front lights shall be visible at least two hundred (200) feet in the direction in which the said motor vehicle is proceeding or heading.''

''Section 2267a. All vehicles during the period described in the preceding section shall carry a light visible two hundred (200) feet from the front and the rear   *   *   *.''

It will be observed from the provisions of this ordinance that there is no distinction between the necessity of having both the front lights and the rear lights burning while the vehicle in question is traveling or standing upon a public street, and this is important to remember as bearing upon the question hereafter raised, to-wit, that the court committed error in injecting as an issue in the case the question of the front lights, when no such question properly appeared from the pleadings or the evidence in the case. The petition pleaded the ordinance, and alleged the following grounds of negligence:

''(1) The defendant unlawfully permitted his automobile to stand upon East 111th street which is a public thoroughfare in the city of Cleveland during the period from thirty minutes after sunset to thirty minutes before sunrise, on the 21st day of January, 1923, without a red light or a white light on the rear thereof.

''(2) The defendant unlawfully permitted said automobile during said period to stand upon said East 111th street without a light visible 200 feet from the rear of said car.

''(3) The defendant failed to give any notice or warning to persons traveling upon the street that

said automobile was standing upon said street in said dark place.''

Thus it will be seen that the ordinance was pleaded in due form, and in addition thereto, as set forth by paragraph three in the charges of negligence contained in the petition, the allegation is made that defendant failed to give any *notice or warning* to persons traveling upon the street, while ''said automobile was standing upon said street in said dark place.''

It appears from the evidence, that, while there is no specific allegation in the petition with respect to the front lights, in the examination of the defendant it was incorporated into the record that the front lights, as provided by the ordinance, were not burning immediately prior to and at the time of the collision which occurred between the car in which plaintiff was riding and the rear part of the automobile of the defendant, as it was standing, in violation of said ordinance, on the west side of East 111th street.

It is claimed that the court committed prejudicial error in his charge by intimating that the absence of front lights was at least some evidence bearing upon the question of notice or warning. The meaning and significance of such a statement is apparent and obvious—to the lay as well as to the judicial mind. It was a link in the chain of evidence, and the important point is not so much that the lights were in front, as that the source of the rays of the light, even though they were projecting in the direction of the car in which plaintiff was riding, determined the location of the car. In other words, a protruding spreading light locates the in-

strumentality from which the light proceeds, for the instrument is at that point where the light first begins to penetrate the darkness and spread its rays, fan-like.

There is evidence which discloses that immediately before the collision the eyes of the driver, and of the occupants of the car in which plaintiff was riding, were dazzled and blinded by a third automobile coming from the south, and it appears from the petition, and is sustained by the evidence, that at the moment this happened the driver of the car in which plaintiff was riding swerved to the right or west, immediately put the brakes in operation for the purpose of stopping the car, and that then and thereupon the collision between the car in which plaintiff was riding and the car of defendant occurred, producing injuries of a permanent as well as a temporary nature to the plaintiff herein.

Able counsel for the defendant charge prejudicial error in that the court below did not direct a verdict under the petition, and cite *Buddenberg* v. *Kavanagh,* decided by the Court of Appeals of the Fourth District, sitting by designation in the Eighth District, and found in 17 Ohio App., 252, the syllabus of which is as follows:

"It is the duty of a driver of an automobile to stop his car when for any reason he cannot see where he is going.

"Where a petition recites that plaintiff was blinded by the lights of an approaching machine so as to be unable to see the street ahead of him, and that while so driving he collided with another machine negligently left in the street, the contributory

negligence of the plaintiff is apparent and there is nothing to submit to the jury.''

From the allegations of the petition and the evidence in the case, we do not think that the *Buddenberg case, supra,* has any application to the case at bar. We find the following allegation in the petition in the case at bar:

''That said automobile coming from the southerly direction approached the automobile in which the plaintiff was riding at a high rate of speed, and Harry A. Whale, the driver of the automobile in which plaintiff was sitting, *endeavoring to avoid being struck by the said automobile and to avoid a collision,* came into collision with the car of the defendant so standing upon said thoroughfare without lights as aforesaid.''

There was no motion made to make said allegation more definite and certain, in order to ascertain in detail whether the plaintiff so conducted himself as would excuse him from the injurious effect of the authority laid down in the *Buddenberg case, supra,* and there is but one inference to be gathered from said allegation, which is that the driver of plaintiff's car was exercising reasonable care to avoid a catastrophe with the oncoming car, the glare of whose lights temporarily blinded the driver of plaintiff's car coming from the north. We find this view supported by the evidence as to the conduct of plaintiff's driver at the moment of the emergency arising as above set forth:

''Q. After you left your father's home where were you sitting?

''A. I was sitting in the left-hand front seat, driving.

"Q. Who were with you?

"A. Brother was in front, the oldest one, Herbert; Howard and Miss Smiley were in the rear seat.

"Q. You were going to 115th?

"A. Yes.

"Q. That is three or four blocks from the place where the accident occurred?

"A. Yes.

"Q. Now as you turned off Primrose to go on to 111th were your lights burning?

"A. Yes.

"Q. Was your lighting system working all right that night?

"A. Yes.

"Q. Had always worked all right?

"A. Yes.

"Q. Was this a new car?

"A. No it wasn't a new car, but one that we had fixed up.

"Q. Now you came down 111th street, just tell the jury in your own way what happened?

"A. When we came down 111th street—I turned off Primrose first into 111th, and was—I had gone some distance there on 111th when there was a machine coming toward me with bright lights on, and when the machine got close to me it kind of swayed toward me and I turned out a little, and the lights blinded me.

"Q. Which way did you turn when you turned out?

"A. To the right.

"Q. When did those lights blind you enough so that you couldn't see?

"A. When his machine sort of swung over toward me.

"Q. Before that you could see the lights however?

"A. Yes.

"Q. But they didn't blind your eyes?

"A. No; they didn't.

"Q. After they blinded you, you turned immediately to the right?

"A. Yes.

"Q. What did you do in turning in reference to slowing down your car?

"A. Then I put on the brakes. Just then I hit the machine that was parked there.

"Q. Were you looking ahead as you were going down the street?

"A. Yes.

"Q. Did you see this car on the right, the Kronenberg car?

"A. No, sir.

"Q. Any light on that car?

"A. No light at all.

"Q. Was there anything to tell you or to warn you that a car was standing there at all without lights?

"A. Not a thing."

With such a status in the record in respect to this element of the case, it is the opinion of the court that the instant case is substantially at variance with the *Buddenberg case, supra,* and instead of being an authority in favor of defendant, we think from the reasoning in the body of the opinion that it supports the view of this court in its analysis of the allegations of the petition and the

record above set forth with respect to the conduct
of the driver of the southbound car, in which
plaintiff was riding, at the moment that the lights
of the northbound car blinded the driver of plaint-
iff's car.    Therefore, we are of the opinion that
there is no substantial ground for the assignment
of error just discussed.

Another contention of the defendant is that the
court committed prejudicial error in permitting the
question of the front lights to become an issue in
the case by way of evidence and by way of
the instruction upon that point given to the jury.
A natural inference arising from the petition is
that the pleader did not intend to make the front
lights an issue in the case.   It is quite clear that
such issue arose unexpectedly during the trial of
the case and from the defendant himself, and that
the pleader was prepared for such an eventuality is
seen by a recurrence to the third paragraph of the
allegations of negligence contained in the petition
wherein plaintiff alleges that the defendant failed
to give any notice or warning to persons traveling
upon the street that said automobile was standing
upon said street in said dark place.   Now it is con-
ceded that the hour was dark, and there is credible
evidence in the record that there were no lights
whatsoever in the front or the rear of defendant's
automobile while standing upon the west side of
East 111th street.   What warning or notice, other
than a light, could there be in the nature of the cir-
cumstances by reason of the darkness?   Obviously
the only notice or warning that could reasonably be
anticipated would be that of a light, and did the
court commit error by permitting evidence of the

non-existence of front lights, based upon this third allegation of negligence with respect to the absence of notice or warning? Would the court be justified, under such an allegation, in excluding evidence of front lights as an issue in the face of language that admits of such an interpretation as would include front lights? In other words, was the court justified in excluding from the various interpretations that might be given such language, that interpretation which pertained to the non-existence of front lights? That the pleader did not intend such an interpretation is not the controlling fact, if as the case developed a fact appeared to which the language of the allegation directly or indirectly pertained. It is one of the arts of good pleading that after specific allegations a general allegation should follow, in anticipation of the development of a fact unknown to counsel at the time of the preparation of the pleading.

We, therefore, think that a reasonable interpretation of the language in the third charge of negligence warranted the court in permitting evidence as to the front lights, and in instructing the jury upon that subject at the close of the trial. In determining this question we are not unaware of the significant fact that the issue as to front lights arose from the evidence of the defendant himself under cross-examination by plaintiff's counsel, and without any objection or exception then and there by counsel for the defendant.

Another significant fact as bearing upon this question is that the ordinance was pleaded and introduced, and by the simple introduction the question of front lights as well as rear lights became

proper testimony by and through the ordinance as bearing upon the *res gestae* in the case, and it has been frequently held by this court that where the state of the evidence warrants it, even though no application therefor has been made, the mere right to have the petition amended to conform to the proof, even though the same was not done, is treated by a reviewing court as if the amendment had been made, provided the evidence in the case made the subject of the amendment a triable issue, and further provided that the issue was one of the theories upon which the case was tried. It is well-settled doctrine that amendments can be made during a trial so that the pleadings may conform to the evidence, for the reason that it is the evidence of a competent nature that makes up the issues in the case, from which the jury reach their verdict.

If the court committed error by injecting such an issue in the case, because it was not specifically contained amongst the allegations of the pleadings and because there was no amendment made during the trial of the case, or if such an issue did not arise as applying to ''notice or warning,'' or by reason of the fact that the ordinance itself was in issue, then it is our opinion that, when application was made after verdict to amend the petition to conform to the proof under Section 11363 of the General Code, any error committed was remedied by the power and authority of the court under the above section of the General Code, which provides that before or *after judgment,* in furtherance of justice, and on such terms as it deems proper, the court may amend any pleading by inserting other allegations material to the case, when the amend-

ment does not substantially change the claim or
defense by conforming the pleadings or proceed-
ings to the facts proved. It cannot be said that
it appears affirmatively from the record that in
allowing such amendment after judgment the court
was guilty of an abuse of sound discretion, and be-
fore there is any foundation for error because of
an abuse of discretion it must appear that the exer-
cise of the discretion was an abuse of power, and it
cannot be said here that under all the circumstances
and facts appearing in the evidence there was an
abuse of discretion.

In support of the above we cite *Barbour* v. *Miles,*
7 O. C. D., 682, as follows:

"Where the defendant first enters upon the ex-
amination of a witness as to facts not involved in
the issues made by the pleadings, and the case is
submitted to the jury without any question or ob-
jection being made or raised as to the admissibil-
ity of such testimony, the court may under Section
5114, Revised Statutes, after verdict and judgment,
in furtherance of justice, permit an amendment of
the petition by averment of such facts, where such
amendment does not change substantially the
plaintiff's claim but does conform the petition to
the facts proved."

To the same effect is *Clark* v. *Clark,* 20 Ohio St.,
page 128:

"It is not error in the court, where the action
has been so brought against the husband as well as
the party in possession, to overrule the plaintiff's
motion for leave to amend her petition so as to
make the husband co-plaintiff instead of defendant,

and laying the right of action in him instead of the wife.

"Motions for leave to amend are addressed to the sound discretion of the court, and their refusal will not be held to be erroneous unless it is affirmatively shown that the discretion was abused."

It is charged by defendant's counsel, in an exhaustive and able brief, that the court committed error in charging the jury in such manner as made an issue of the front lights, and, therefore, added an issue not appearing in the pleadings or the evidence, and hence the jury were not warranted in considering it. It appears from a question by one of the jurymen that as to his mind at least the question of front lights and its bearing upon the case was under consideration. The ordinance would be violated if there were front lights but no rear lights, and would also be violated if there were rear lights and no front lights. The ordinance makes no distinction as to the existence of front or rear lights, and the ordinance can only be complied with by obeying its injunctions in their entirety, and anything substantially and materially less would be a violation. As to whether the jury returned their verdict based upon the absence of tail lights or the absence of front lights, or both, it is impossible to tell, but it is clear that there was credible evidence to support a verdict under the conceded theory of the case, to-wit, the absence of rear lights on defendant's machine. This brought about a situation which we think, under the established authorities, placed a burden upon counsel for the defendant to submit interrogatories to the jury, and in the absence of such interrogatories to the

jury, we think the error complained of was not prejudicial in its nature, and no reversal of the judgment below could be based upon that ground.

It may be said a verdict might have been rendered for plaintiff on the mere expression of the court as to the issue of front lights alone, contrary to the theory of plaintiff's case. We think there is no merit in this claim, for the reason that the record abounds with evidence to support the conceded theory of the case that there was a violation of the ordinance as to the rear lights. It is not a reasonable conclusion that the jury ignored the weighty testimony as to the absence of rear lights and took refuge for their verdict in the front lights alone, on the reference made thereto by the court.

In line with these views in our judgment is *Sites* v. *Haverstick,* 23 Ohio St., 626, the syllabus of which reads:

"Where the jury, by their verdict, 'find the issues joined in the cause' in favor of one of the parties, this is to be taken as a verdict finding each and all of the issues therein for such party.

"In such case, if the issues are such that a finding of either of them in favor of the successful party entitles him to the judgment rendered, the judgment will not be reversed for error in the instruction of the court relating exclusively to the other."

The *Sites* v. *Haverstick case* is cited with approval by Chief Justice Marshall in *Scioto Valley Ry. & Power Co.* v. *Rutter, Admx.,* 112 Ohio St., 500, 147 N. E., 910.

Further to support us in this view we quote from

*Jones* v. *Erie Railroad Company,* 106 Ohio St., 408, 140 N. E., 366, as follows:

"While it is the duty of counsel to his client in the trial of a cause to save exceptions to all errors committed by the court, it is equally the duty of counsel to the court to submit special interrogatories, to determine whether the error, if any, shall operate to defeat substantial justice."

In the opinion, on page 414 (140 N. E., 368), the court further says:

"Counsel not having taken that precaution, and this court having no means of determining what was in the minds of the jury, and the presumption obtaining that by reason of the rendition of a general verdict all defenses were resolved in defendant's favor, the error relating to the presentation of the defense of assumption of risk must be disregarded."

In *McAllister* v. *Hartzell,* 60 Ohio St., 69, at page 95, 53 N. E., 715, 719, the court in an opinion by Spear, J., uses this language:

"It is settled in this state that in a case where the issues are such that a finding of either in favor of the successful party entitles him to the judgment rendered, the judgment should not be reversed for error in the instructions to the jury relating exclusively to the other issue."

On reading the charge we find that the court as to each issue of negligence charged the law very adequately as to proximate cause, so that the jury could not fail to understand the law applicable to the facts as they found them.

It is further charged by defendant that the court committed error in making contributory neg-

ligence an issue in charging the jury thereon. The record discloses that while the court in discussing this issue attempted to define contributory negligence, at no place in the charge did he shoulder upon the defendant the burden of proving that issue, and in this respect the defendant has no cause to complain, and it may be said further in this regard that where the issue of contributory negligence does not appear in the case by the pleadings or by the evidence the plaintiff is obviously the one who is primarily prejudiced, because that would absolutely defeat his recovery, no matter how negligent the defendant might be, and this fact is significant when we analyze the claim of error made against the court in this respect. Under these circumstances we do not think it was prejudicial.

But does not the defendant himself, even in his answer, inject the issue of contributory negligence? The defendant charges the plaintiff in three distinct paragraphs with negligence, and it appears by the record that there is some proof in support of these allegations, and when such proof is coupled with that credible evidence in the record which shows negligence of the defendant, then contributory negligence legally, logically, and irresistibly arises.

Bearing upon the close relationship, the imaginary legal line, between negligence and contributory negligence, we quote from former Chief Justice Henry Lamm, of Missouri, who in one of his opinions used the following language, to be found in Legal Philology, pages 233 and 234:

"But it may be said again, as often before, that jurisprudence is not an accurate science in the

sense of mathematical accuracy. It is an applied science, so adjusting itself to men's affairs as to produce just results. When we come to apply counsel's theory to a concrete case, the logic of it would be that, whenever a defendant pleads contributory negligence, it thereby admits its own guilt out of hand. Further, that if defendant in one breath denies its guilt, and in the next breath asserts it (for example, by a plea of contributory negligence), it lays itself open to a charge of making contradictory and self-destroying allegations. It has not been hitherto supposed by the common thought of the profession that the stereotyped answer of defendants in negligence cases was subject to such novel construction. Let us see how that would work. Indulging an hypothesis, suppose under a plea of contributory negligence, coupled with a general denial, plaintiff would ask and receive an instruction telling the jury that by such plea defendant admitted its own negligence, would learned counsel contend such instruction was good law? Hardly, though it might do if defendant stood alone in its answer on contributory negligence as a defense. The question in hand may be disposed of by holding, as we do, that the pith and sense of it all is this: Defendant's answer in this case denied its own and pleaded plaintiff's negligence. Now plaintiff's negligence, in a case where (as here) defendant's negligence is charged and proved, is at bottom 'contributory negligence,' and nothing else. There is nothing in a name—the thing to be got at is the substance.''

As bearing upon this point we quote *Glass* v. *Heffron Co.*, 86 Ohio St., 70, 98 N. E., 923:

"An answer which sets up first a general denial of the allegations in the petition, and second, a denial that defendant was negligent, followed by an averment that it was by the plaintiff's own fault and negligence that he was injured, does not raise the issue of contributory negligence; but it is more than a denial that the plaintiff was without fault. It is an averment that the plaintiff's own negligence was the sole cause of his injury."

Further to support our contention upon the question now under discussion, we quote both paragraphs of the syllabus in the case of *Rayland Coal Company* v. *McFadden, Admr.*, 90 Ohio St., 183, 107 N. E., 330, which authority is also cited by our Supreme Court in *Scioto Valley Railway, Power & Light Co.* v. *Rutter, Admx., supra:*

"In an action of negligence where the answer of defendant contains a general denial and an averment that the 'death of the deceased was caused wholly and solely through his own negligence and fault and without any fault whatever on the part of the defendant,' and evidence is introduced at the trial by each party in support of its claims, from which the jury might properly find that both defendant and deceased were negligent in such material matters as combined to produce the proximate cause of the injury, it is the duty of the court to instruct the jury as to the law governing the situation thus developed; and it is error for the court to charge the jury that contributory negligence is not in the case.

"In such case the issue of contributory negligence is not made by the pleadings, but is raised by the evidence properly offered by the parties in sup-

port of their respective claims as made in the pleadings. The issue of contributory negligence thus raised is to be determined by the same rules as to burden of proof and otherwise as if made by the pleadings.''

But it is useless to quote authorities, for it is the established doctrine in Ohio, as well as elsewhere, that even though the pleadings do not raise the question of contributory negligence, if it becomes an issue in the case by virtue of the evidence, it then becomes the duty of the court, regardless of the pleadings, to charge the issue of contributory negligence, and the fact that it is not pleaded is absolutely immaterial. But it is vital that it appears as an issue in the testimony.

It is also charged that the court committed error when it instructed the jury on the question of imputed negligence. From the record in the case it clearly appears that the plaintiff was a passenger and that one Harry Whale, a relative, was the driver, and it also appears that this plaintiff had no control whatsoever over the car, and thus, in line with the well-known authorities, having no authority or control, and not exercising the same, he could not be held responsible for negligence imputed to him. Especially is this the rule in Ohio. Therefore, as part of the *res gestae* and as descriptive of the character of the plaintiff as contradistinguished from the character of the driver, it became necessary for the court, in order that the jury might not be misled, to use proper language in identifying the plaintiff with those characteristics with which the law surrounds him. That is all

the court did, and we see no error prejudicial to the defendant in this record.

Under the evidence in the case the jury might have found for the defendant by reason of the contributory negligence of the driver, had not the court laid down the law to the jury that the negligence of the driver could not be imputed to a passenger who was free from any contributory negligence himself.

Upon the question of the weight of the evidence, after an examination of the record we do not think that the judgment is clearly and manifestly against the evidence.

We have examined the charge as a whole and have come to the conclusion that there are no errors which are prejudicial to the complaining party, and we are guided in this rule by *Powell* v. *State*, 87 Ohio St., 460, 102 N. E., 1129, where the court held that a judgment will not be reversed for an erroneous charge, if such charge was not prejudicial to the party complaining thereof.

In *Renick-Bonner Farm Co.* v. *Schilder*, 87 Ohio St., 477, 102 N. E., 1130, it was held that a judgment will not be reversed for errors which appear from the entire record not to have been prejudicial to the party complaining thereof.

Error is claimed in that the court used improper language in charging the jury as to any future injuries, by using the words "will reasonably be expected to suffer in the future," instead of using language in substance "reasonably certain to follow." We do not think there is any material difference between the use of the language complained of and the language which it is insisted should have

been used.  In the case of *Atchison & Topeka Rd. Co.* v. *Hamlin,* 67 Kan., 476, 73 Pac., 58, we find the following definition of the word expect: "To look for (mentally); to look forward to for something that is believed to be about to happen or to come."

We think that whatever is reasonably expected is in a substantial sense reasonably certain, and we do not think the jury were misled or the complaining party prejudiced by the court's not using the term "reasonably certain."  There was evidence of the temporary injuries and evidence of permanent injuries, and from the evidence in the case the jury from the language expressed by the court could use no other basis for their reasoning as to the future excepting such injuries as were reasonably expected or reasonably certain to follow.  If the word "reasonably" were not used in connection with "certainty," there might be some ground for complaint, but the certainty as to the future is a reasonable certainty and in this respect the language is akin to reasonable expectancy.

We quote from *Miller* v. *Boone County,* 95 Iowa, 5, 11, 63 N. W., 352, 354, as follows:

"The court instructed the jury that if the defendant was liable the plaintiff was entitled to recover for 'bodily and mental suffering, if any, which she has heretofore undergone, or may reasonably be expected to undergo in the future.'  It is urged that this instruction is error in so far as it authorizes damages for future pain and suffering, because it is not qualified by the thought that damages for future suffering should be based upon the evidence.  Such a qualification is necessary

where there is contention as to the permanency of the injury. But in this case the injury is shown beyond question to be permanent, and the direction to award such damages as may reasonably be expected to arise in the future refers to the condition of the plaintiff as shown by the evidence. * * * In the case at bar the injuries were permanent, and, with that fact established, there was no occasion to make instruction any more specific than it was.''

We have examined the other numerous assignments of error and have come to the conclusion that they are not prejudicial. After an examination and review of the entire record, it is the opinion of the court that substantial justice has been done under the substantial and material rules of law.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

LEVINE, P. J., concurs.

VICKERY, J., dissenting. Not being able to concur with my associates in affirming this judgment, I feel it my duty to give my reasons why.

I think this judgment should be reversed for two reasons: First, from a reading of this record, I cannot see that the plaintiff in error, defendant below, was guilty of any negligence whatever which contributed to this accident. He parked his car facing south at the proper place on the right side of East 111th street, which runs north and south, and he says that when he parked his car he turned on the tail light, and all I can make out of the evi-

dence and the opinion of the majority of the court on that question is that there was *credible* evidence to show that the tail light was not lit. Granting that there is some evidence which might be regarded as *not very credible,* as it comes from the injured men that were riding in the car that struck the parked car, it does not at all approach the credibility of the evidence of the man who turned the light on and swears positively that he did. But possibly if this were the only question involved in this lawsuit, the jury might have been warranted in finding against the plaintiff in error on that proposition, although I think not.

The theory of this lawsuit as outlined in the petition was that there was no *tail* light or *other warning* to warn vehicles on the street. Apparently plaintiff believed that the absence of a head light, as it turned out afterwards from the frank statement of the defendant below that he did not turn on the headlights, was not regarded as having any causal effect in this law suit, and I must say that I think that is right.

The *other warning* spoken of in the third specification must be taken in connection with the absence of a tail light, bearing in mind always that this was a rear end collision. An analysis of the evidence in this case will show that even had there been a tail light, or in spite of a tail light, this accident would have happened. Plaintiff below testified that they were driving their car, and when they were met with the glaring head lights of an oncoming car from the south, which was coming at a high rate of speed and blinded them and prevented them from seeing, they slackened and im-

mediately turned to the right and crashed into the standing car. If that was so they were too close to the car to have been warned by a tail light.

An analysis of the opinion of the majority of the court will show that great stress is put upon the fact of the absence of a *head light.* I am coming to that later. It must be remembered that this car was parked on a city street, and the cause of the accident as detailed by the plaintiff in his petition and set forth in the evidence was the glaring headlight of the oncoming car. That glaring headlight must have put the car that was standing by the side of the street in bold relief, and surely the white light of the glaring headlight would so blend with any other lights around the car that they would have been lost sight of. To me the proximate cause of this injury was the glaring headlights of the oncoming car, together with the natural impulse of the driver of plaintiff's car to get away from the oncoming car, which impelled him to immediately turn to the right and instantly crash into this standing car. I do not see that the defendant below, plaintiff in error here, was guilty of any negligence whatever that contributed to this injury, and for that reason there should have been a verdict for the defendant below.

In this connection the case of *Buddenberg* v. *Kavanagh,* 17 Ohio App., 252, decided by the Court of Appeals of the Fourth Appellate District, sitting by designation in this district, is illuminating, and surely the decision of the majority of this court in this case is in direct contradiction of and overrules that decision. In that case the facts in favor of the plaintiff in the court below are

stronger than they are in this. There the truck
into which the driver of the automobile ran was
parked on the wrong side of the street, in violation
of the ordinance, but the cause of the accident was
the same as in this case, namely, the glaring head-
lights of an oncoming car. The trial court directed
a verdict for defendant, the Court of Appeals
affirmed that judgment, and the Supreme Court
refused to have the case certified to it for review,
so in effect it is a ruling of the Supreme Court,
and surely that case is a stronger one than the
case at bar, and would give the plaintiff much more
right to recover, because in that case there can be
no question whatever of the negligence of the owner
of the truck.

In Berry on Automobiles (4th Ed.), Section 430,
is a discussion of this subject of the effect of glar-
ing headlights, and an assertion that they, rather
than the object into which the deflected car runs,
are the proximate cause of the injury. See the case
of *Hammond* v. *Morrison,* 90 N. J. Law, 15, 100
A., 154, and many other cases to the same effect.

But there is another grave, or if I may say so,
still graver, error than the one already mentioned.
The majority opinion says there was *credible* evi-
dence to show that there was no tail light on this
car. I have already said what I desire to say upon
that question. The credible evidence apparently
impressed the jury rather *against* the theory that
there was a tail light. Turning to the charge of
the court at about the conclusion thereof, a juror
arose in the jury box and said:

"Juror: May I ask a question? What if the
lights on the front of the car were not lighted?

"The Court: That is a violation of the ordinance.

"Juror: May I ask another thing?

"The Court: You have the ordinance which I read to you.

"Juror: We don't have to consider just the tail light being lighted?

"The Court: No. You consider all the conditions and circumstances surrounding the case at the time.

"Juror: Oh!

"The Court: Now, there isn't much more that the court can say to you. You are the sole judges of the facts in the case."

Later in the charge, after some conversation between the court and counsel, the court said this:

"I say to you as a matter of law that if the passenger was using ordinary care at the time and was not guilty of any contributory negligence on his part, as I have defined to you, but you do find that there was negligence on the part of the other car with the glaring headlights, in connection with the negligence of the driver of the Davis car in connection with the negligence of the defendant, if you so find, then, notwithstanding these facts, the plaintiff could recover from this defendant."

Out of the hearing of the jury, Mr. McMorris, attorney for the defendant, asked the court to correct his charge in this respect by stating to the jury that plaintiff's right to recover must be confined to the claims of negligence made in the petition; that no recovery in favor of the plaintiff would be warranted or permitted upon any negligence going to the absence of headlights on the parked car, as such a claim of negligence was not in the issues.

"The Court: As a whole I refuse to give that.

"Mr. McMorris: Save an exception. Then I ask the court to define more clearly to the jury the issues in that respect, if the court claims there is such an issue as to the headlights.

"The Court: I don't see how much more simple I could put it than I have.

"Mr. McMorris: A juror asked that question as I understand.

"The Court: I charge you that this plaintiff, in order to recover, must show by a preponderance of evidence some one or all of the acts of negligence complained of on his part. Now he specifically calls attention to certain acts of negligence in the violation of the ordinance. One of the questions put by a juror perhaps may be confusing. Now, the first charge of negligence of the violation of the ordinance is as follows:

"That the defendant unlawfully permitted his automobile to stand on East 111th street, a public thoroughfare, in the night time without a red light and a white light on the rear thereof; that he unlawfully permitted that automobile during the night period to stand on the street without a light visible two hundred feet from the rear of the car.

"The third specification of negligence is that the defendant failed to give any notice or warning to persons traveling on the street; that said automobile was standing on that street in that dark place. The question put by one of the jurors as to whether or not a violation of the ordinance would be affected by a failure to have front headlights. I say that you may consider the failure to have that headlight under the specification number 3

upon the theory that if there had been a front headlight on the car there would have been some notice or warning as that would shine upon the street and give the people some idea that the car was there. For that purpose only can you consider the failure, in the event there was a failure, to have headlights; the purpose is only one of notice or warning.

"Mr. McMorris: We except to the charge of the court in reference to the statement that there was a defense of contributory negligence in the answer and in the issues on the pleadings, and for the reason that no such issue is presented by the pleadings."

Now, from a reading of this record, one must come to the conclusion that the absence of a headlight was a good deal more important than the court seemed to think. The court in effect told the jury by this last charge that had there been a headlight there it would have given notice of the location of the car in the dark place. I have already disposed of that and do not wish to say anything more upon that question, except that at best it was a question for the jury to determine whether it would or would not have given notice of location. The court stated in so many words that it would give notice of the proximity of the car. That proposition I do not give credence to for I have tried many times in the city to test that proposition and I find that it is not true. Of course, I concede that had the car been standing in a dark place in the country, where there are no lights around, the headlight might diffuse some light to show that a car was parked there, but

surely not with the glaring headlights, which were white lights, coming toward the driver of the wrecked car under the circumstances detailed in this record.

The error which I think is grave and for which this case should be reversed is in the court not telling the jury that the absence of a headlight in this case was not the proximate cause of the injury. He permitted them to speculate upon it, and in reading this record I cannot help but think it was because of the absence of a *headlight* that the jury brought in the verdict they did. It was a hind end collision and I think the record shows the tail light was lit. From the question of the jury, I think they would have come to that conclusion, but then the headlights were injected in there, and the court then submitted the question to the jury without pointing out to them that the headlights must have been the proximate cause of the accident before being given consideration by them. I think it was the duty of the court to have told the jury in so many words, plain and unequivocal, that inasmuch as this was a tail-end collision, the headlights had nothing to do with it and should not be considered by them. Apparently counsel for the plaintiff below thought it necessary to get the headlights into the record, and so after the verdict they were permitted to amend their pleading by specifying as an act of negligence that the headlights were not lighted. I think this was an abuse of discretion under the circumstances of this case. It is tried upon the theory that there was no tail light which would show 200 feet in the *rear,* although all the evidence shows that when the col-

lision occurred the driver of the wrecked car was almost abreast of the standing car and turned immediately and crashed into it.

The other warning that is spoken of in the third specification did not and could not include headlights, and it was not so conceived by the pleader, and the court strained that language in order to make it include that possible act of negligence. It meant there were no tail lights to warn oncoming vehicles, or other warning. If the tail lights had been out of order and they could not light them, there would be a duty to give other warning. Surely the headlights would not have excused it. If a man was standing there and warned them, or there was some other form of warning, that is what the pleader had in mind, to guard the car from a rear end collision.

One cannot help but think, after the juror's questions and the colloquy between the court and counsel, and the charge of the court on that question, that undue prominence was made of the absence of headlights on this car, and the court nowhere properly charged the jury in this respect as to its not being the proximate cause. Then, in that situation, to amend the pleadings after the case was tried seems to me to be an abuse of discretion in order to sustain a verdict and judgment thereon which were not warranted as the case was tried.

For these reasons I think this case ought to be reversed. Think of it for a moment! Here is a man who parks his car, properly parks it, does what every man is doing all the time, turns on the tail lights, as he said he did, leaves his car on the street close up to the curb, parallel with the curb,

and another man driving in the same direction, who is blinded by the glaring headlights of an oncoming car, turns to get out of those glaring headlights and immediately crashes into the standing car, and then recovers a judgment which would take away a man's earnings and savings for a life-time, without any fault or negligence, as I look at it, on the part of the owner of the standing car. Such holding can only be a menace to every owner of a car who is compelled to leave it standing on a street.

These are the reasons why I cannot concur in this judgment.