24 N.J. Super. 559 (1953)
95 A.2d 153
ISAAC W. SEILER, PETITIONER-APPELLANT,
v.
ELEANOR ROBINSON, AND OTHERS, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1953.
Decided February 10, 1953.
*560 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Aaron Gordon argued the cause for the appellant.
Mr. Robert A. Vanderbilt argued the cause for the respondents (Messrs. Toner, Crowley & Ackerman, attorneys; Mr. Marshall Crowley, of counsel).
The opinion of the court was delivered by BIGELOW, J.A.D.
The appellant has a heart condition for which he seeks compensation under the Workmen's Compensation Law. The only question presented by the appeal is whether or not the injury to his heart was caused by an unusual strain in the course of his employment. If not, compensation must be denied. Seiken v. Todd Dry Dock, 2 N.J. 469 (1949).
Appellant, age 57, was a salesman of asbestos shingles, or siding. On the day of the alleged accident he called about noon on one Rizzi, who lived on the third floor of a three-family house. There was a flight of six or seven steps from the sidewalk to the front door, 14 or 15 steps more to the second floor, and the same number to the third floor. "I practically ran up the steps to make time." He found that Rizzi needed siding for a house on Seventh Street, a couple *561 of blocks away. They discussed what type of material would be suitable and finally Seiler said he would have to measure the building before he could give Rizzi a price. So he left, drove to the building, did the measuring, and was back in half an hour.
"I took some of the siding samples in a brief bag and hurriedly made for" Rizzi's apartment. On the steps from the sidewalk to the front door, he felt he was overstraining himself. After an interruption of his testimony by counsel, he resumed his narrative:
"I was getting this brief bag and the figures and, as I walked up the steps, it was an effort, quite an awful lot of effort, to keep from letting go of these things, but I kept on and, as I got midway up to the second landing, I couldn't breathe too well, and my heart began to pound, and I continued up in spite of that until I got to the landing of the second floor. At that point I simply could not breathe at all and I got an awful piercing pain across my chest so that I was completely out, dropped everything I had, and laid down on the floor."
His counsel asked him what he was carrying at the time and he replied:
"I had six pieces of a certain siding, insulated siding, and another sample, it is a grouping of samples, put together from a sort of a book made of contents that are an asphalt shingle and, in addition to that, I had my brief bag in which there were literature and other things pertaining to the business. That was all that I was carrying at that time."
The total weight he estimated at 48 pounds. The six pieces of siding weighed four pounds each; the book which contained 10 or 12 samples of asphalt shingle, weighed 14 pounds, and his brief case with contents made up the balance.
After lying on the landing for some time, Seiler climbed the last flight of stairs, still carrying all 48 pounds, and showed his samples to Rizzi. They talked for about 25 minutes but came to no definite conclusion. Then Seiler departed, taking his belongings with him, without having mentioned the heart attack.
*562 He drove about two miles to Lake Street, where he had another call to make. As he was reaching his destination, the pain began to come on again and grew worse. After lying down for a while, he had himself driven to his home. A doctor was summoned the same day and found him suffering from coronary thrombosis. The thrombus (or blood clot) caused a permanent injury to Seiler's heart. We are satisfied that while the heart was in poor condition before the happening above recited, a serious injury or aggravation of the condition resulted from the thrombosis and that, in turn, was caused by the exertion and strain attending the call on Rizzi.
On cross-examination Seiler said that usually when calling on a prospect who was undecided as to type and color of shingle, he would bring a book containing pictures of the various materials, and one or two samples. Never more than one or two. The book with pictures is not the 14-pound book of samples that he says he carried up to Rizzi's apartment. That book "we don't carry and submit for inspection unless we are required to or requested to." But when calling on Rizzi he took the additional samples and the book of samples to avoid another trip down to his car and back, that might be necessary if Rizzi were not content with what appeared in the printed book or with the one or two samples.
Rizzi, testifying one year and seven months after the event, said that Seiler brought up to his apartment two samples and his bag and nothing else.
The deputy director, who heard this matter for the Division of Workmen's Compensation, expressed himself as doubtful whether Seiler carried with him up the stairs all the shingles he claimed to have taken, but found that the heart injury was caused by his hurrying up the stairs with the brief case and such samples as he actually had with him, coupled with the emotional stress arising from his eagerness to make a sale. On this finding, compensation was awarded to Seiler.
The County Court concluded that "The particular work in which petitioner was engaged at the time he suffered the *563 described attack was the usual routine course of labor to which he was accustomed, thereby negating any reasonable inference of an unusual or unexpected strain." Judgment was entered for the employer, denying compensation.
The word "unexpected" in the findings of the Court requires some comment. A number of cases employ that word in the definition of accident. Hall v. Doremus, 114 N.J.L. 47 (Sup. Ct. 1934). But in happenings like that before us it is not the hurrying upstairs or the unloading of the metal ingots or the leaning over that must be unexpected or undesigned, but the resulting heart injury or sacroiliac sprain. Franklin v. U.S. Bronze Powder Works, 6 N.J. Super. 320 (App. Div. 1950); Ptak v. General Electric Co., 16 N.J. Super. 573 (App. Div. 1951).
On the appeal to the Appellate Division, every intendment is in favor of the judgment of the County Court. To raise a doubt is not enough to lead to a reversal. We should not disturb the County Court's finding of fact unless we are well satisfied that the finding is a mistaken one. Donofrio v. Haag Brothers, 10 N.J. Super. 258 (App. Div. 1950); McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276 (App. Div. 1950).
Seiler's eagerness to make a sale was part of his daily existence; it does not appear that Rizzi was unusually important as a prospect. The hurry, the climb up several flights of stairs, were part of the usual routine. The only circumstance that might cause the strain on Seiler's heart to be classified as unusual, was the weight he carried, if in fact he had with him besides his bag the folder containing samples and five or six shingles. Rizzi vigorously contradicted Seiler. While we recognize that Rizzi had no reason for noting carefully what Seiler carried, or for retaining the fact in his memory, we also consider that the force of Seiler's evidence is weakened by his interest in the case. And his testimony is not inherently convincing. We cannot overlook his failure in his first two narratives to mention the heavy samples and folder. "I took some of the siding samples in a brief bag." *564 "I was getting this brief bag and the figures." The deputy was doubtful what Seiler actually carried up the stairs; the County Judge found only "the usual routine course of labor."
We find insufficient ground for making new findings of fact or reversing the County Court.
Judgment affirmed.