**AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation, Plaintiff,**

v.

**MARTIN BROS. CONTAINER AND TIMBER PRODUCTS CORP., an Ohio corporation, Defendant.**

Civ. No. 64-392.

United States District Court
D. Oregon.

Jan. 21, 1966.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for plaintiff.

Irving Rand, Robert Clapperton and George W. Mead, Portland, Or., for defendant.

## OPINION

KILKENNY, District Judge.

This is a declaratory judgment action in which plaintiff seeks a declaration of rights and liabilities under its insurance policies issued to, and in favor of, the defendant. Plaintiff is a corporation organized under the laws of the state of Connecticut. Picton-Cavanaugh, Inc., with offices in Toledo, Ohio, was authorized to execute and issue in behalf of the plaintiff various forms of insurance coverage and for many years, on behalf of the plaintiff, issued to defendant, as agent for the plaintiff, various forms of insurance coverage, including the two policies here in question. Plaintiff maintained a claim department in Oregon with head offices in Portland. One of the policies under observation was issued on November 1, 1960. The other, on or about November 1, 1963. The policies covering a period from November 1, 1960, until November 1, 1964. These policies were issued through the Ohio agency of plaintiff to defendant at its principal place of business in Toledo, Ohio. Defendant is engaged in the business of manufacturing and sale of plywood and forest products and operates plants in the states of Ohio, Tennessee, Louisiana, California and Oregon.

During the policy period, defendant employed Albina Engine & Machine Works (Albina) to erect and install a new steam generating plant at the mill of defendant in Oakland, Oregon. The type of boilers selected by Albina required material alterations in order to convert them from their former use as part of an electric power system, to one where the power would be developed by the use of sawdust from defendant's mill. The plant was placed in operation on

October 12, 1963, and, from the outset, the parties experienced difficulty in bringing the boiler pressure up to a point which would permit the mill to operate at full capacity. Likewise, from the start, "flyash" was emitted from the stacks and some of this material settled on the mill and in outlying areas. As the plant approached full capacity, the emission of the "flyash" increased to such an extent that in early December, the Council of the City of Oakland had the problem before it and some three or four days later a woman owning a motel in the area complained to the defendant about the substance being deposited on her property. It was not, however, until December 30th that the situation reached a point where the Council called a representative of defendant to its meeting. There, defendant's representative learned of many complaints that had been made about the deposit of the substance on property other than defendant's. Shortly after the December meeting, the defendant notified its Ohio office and, in turn, on January 11, 1964, the plaintiff was notified of the problem. Plaintiff commenced its investigation on or about January 21st. During the course of the investigation numerous law suits were filed against defendant in the state courts of the state of Oregon in connection with the emission and deposit of "flyash" materials on the claimants' properties. The charges against defendant, in those actions, have been summarized by the parties in the pre-trial order as follows:

"In each of said actions so filed by said claimants the complaint of the plaintiff alleges in substance that on or about October 15, 1963, the defendant, Martin Bros., put said steam plant into operation and since said date and to the date of filing the complaint burned in the furnace of the steam plant large amounts of bark, sawdust and other wood products, and the furnaces did not efficiently dispose of the large volume of wood products burned therein, and as a result of the operation of the steam plant, the defendant, Martin Bros., allowed and permitted quantities of soot, ashes and cinders to enter the atmosphere and to be disbursed and deposited upon and over the property of the claimant in the action, to the claimant's damage in the amount alleged."

Seventeen of the state court actions resulted in judgments or settlements totaling $46,354.00 for property damage and $16,200.00 for personal injuries. One of the actions is still pending. Attorney fees in defending the actions which have been settled or have gone to judgment amount to $4,782.50 and costs in the sum of $932.32.

Although plaintiff admits the reasonableness of the settlements and the validity of the state courts' judgments, it disclaims liability on the following grounds:

1. That the plaintiff is not obligated to defend the actions filed against the defendant for property damage claims, and that it is under no obligation to pay any judgment that may be rendered against the defendant in said actions.

2. That the plaintiff is informed and believes and therefore contends that the defendant did not give written notice to the plaintiff as soon as practicable of the claims arising from the emission of 'flyash' from the defendant's plant at Oakland, Oregon; the plaintiff is informed and believes and therefore alleges that the defendant had knowledge of said claims shortly after the 12th of October, 1963, and that its first notice of said claims to the plaintiff was in January or February of 1964.

3. That the emission of 'flyash' from the defendant's plant at Oakland, Oregon, following the installation of the new boiler system was not an 'occurrence' as that term is defined in the policies of insurance.

Significant portions of the insurance policies, which must be construed, are

set forth in the footnote.[1] By endorsement, the policies were modified.[2] Additionally, the policies provided for notice.[3]

(1) The first point for consideration is defendant's contention that it has no duty to defend in connection with the property damage claims. It is settled law, both in the states of Oregon and Ohio, that the insured's obligation to defend is settled by the allegations in the pleadings. Journal Publishing Co. v. General Cas. Co., 210 F.2d 202 (9th Cir. 1954); Lessak v. Metropolitan Cas. Ins. Co., 168 Ohio St. 153, 151 N.E.2d 730 (1958); Socony-Vacuum Oil Co. v. Continental Cas. Co., 144 Ohio St. 382, 59 N.E.2d 199 (1945).

Here, we must turn to the agreed charges in the pre-trial order which supersedes the pleadings. The charges in the pleadings, as summarized in the pre-trial order, clearly state a claim for violation of a legal right. The fact that the charges may sound in tort for trespass, or for common law negligence or as constituting a nuisance or otherwise, is of no importance. The charges were sufficient to show a probable liability under the policy. If there is any doubt as to whether the charges against an insured state a claim within the coverage of the policy, such doubt will always be resolved in favor of the insured. Macdonald v. United Pacific Ins. Co., 210 Or. 395, 311 P.2d 425 (1957); Blohm v. Glens Falls Ins. Co., 231 Or. 410, 373 P.2d 412 (1962). Plaintiff had an obligation to defend the actions and is liable for the attorney fees and costs incurred.

(2) Since the insurance policies were made, executed and delivered in the state of Ohio, the law of that state will govern on the issue of proper notice. Lane v. Brotherhood of Locomotive Enginemen & Firemen, 157 Or. 667, 73 P.2d 1396 (1937); Sterrett v. Stoddard Lbr. Co., 150 Or. 491, 46 P.2d 1023 (1935); Restatement, Conflict of Laws, § 318.

In Ohio, it is well established that an insurance company relying on a policy provision with reference to notice, must establish that the failure to

---

1. "Coverage C—Bodily Injury Liability—Except Automobile

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

"Coverage D—Property Damage Liability—Except Automobile

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

"II. Defense, Settlement, Supplementary Payments

With respect to such insurance as is afforded by this policy, the Company shall:

(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient. * * *"

2. "GENERAL LIABILITY
Occurrence Basis
(Including Property Damage)

1. The words 'caused by accident' are deleted and elsewhere the word 'accident' is amended to read 'occurrence'.

2. 'Occurrence' means an event which unexpectedly causes injury during the policy period, or a continuous or repeated exposure to conditions which unexpectedly causes injury to persons or tangible property during the policy period. All such exposure to substantially the same general conditions shall be deemed one occurrence."

3. "7. Notice of Accident—When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

give notice prejudicially affects its rights. Nationwide Mutual Ins. Co. v. Motorists Mutual Ins. Co., 116 Ohio App. 22, 186 N.E.2d 208 (1961); Mettes. v. Taylor, Ohio Mun., 172 N.E.2d 747 (1959); Keith v. Lutzweit, 106 Ohio App. 123, 153 N.E.2d 695 (1957). Here, the first notice of a complaint on damage by the deposit of "flyash" was in the early part of December and the plaintiff was notified of claims in the early part of the following January. This court has already spoken on the subject where the occurrence was of such a nature that the assured did not believe harm would occur. General Ins. Co. v. Gilliam County High School Dist., 234 F.Supp. 109 (D. Or.1964). I find that plaintiff was not prejudicially affected by any delay in notification.

■ "As soon as practicable," means notice within a reasonable period of time. Hoffman v. Employer's Liability Assur. Corp., 146 Or. 66, 29 P.2d 557 (1934). So even if we apply Oregon law, that notice is a condition precedent to liability, Hoffman v. Employer's Liability Assur. Corp., supra, I would be compelled to find, under the facts and circumstances of this case, that notice was given within a reasonable period of time.

■ Although the record contains a statement by the general manager of the plant that he was aware of soot falling on "people's properties from October 12th on," the record is clear that the fall-out in the early operations was of a very minor nature and, as previously stated, the damaging nature of the deposits was not definitely called to the company's attention until the early part of December. What was a reasonable length of time in which to give notice is an issue of fact, which I resolve against the plaintiff. The insurance company,

being the author of the language "as soon as practicable" must face the burden of an unfavorable construction. And if the policy is to be construed under the searchlight of Oregon law, the plaintiff in seeking a declaratory judgment has the burden of proof throughout the case. First National Bank v. Malady, Oregon Supreme Court, 408 P.2d 724. The Oregon rule is supported by Moore's Federal Practice, Vol. 6, page 3157, and Anderson, Declaratory Judgments (2d Edition, 1951), Vol. 2, page 872.

■ (3) The principal thrust of the plaintiff's argument is that the damage caused by the deposit of "flyash" during the questioned period was not one *"which unexpectedly"* caused injury during the policy period, nor did such damage fall within the coverage provided by the language *"or a continuous or repeated exposure to conditions which unexpectedly causes injuries to persons or tangible property during the policy period."*[4] (Emphasis supplied.) I believe that defendant fails to distinguish between an event which "unexpectedly occurs and unexpectedly happens", and an event which "unexpectedly causes injury." Plaintiff urges that the deposit of the "flyash" was noticed by the defendant early in October. While the record showed that defendant knew that the deposit of the material was causing damage of more than a minor nature from and after the early part of December, the record supports a finding that throughout the period, both before and after notice to the plaintiff, the defendant was making major changes in the plant in order to eliminate the problem. For that matter, the plaintiff, after commencing its investigation, acquiesced in, and encouraged, the defendant to continue with its operations and with its tests so as to remove these causes. The record supports a finding that each time the mill

---

4. "'Occurrence' means an event which unexpectedly causes injury during the policy period, or a continuous or repeated exposure to conditions which unexpectedly causes injury to persons or tangible property during the policy period. All such exposure to substantially the same general conditions shall be deemed one occurrence."

was placed in operation the defendant and its contractor Albina had hopes that they had finally made the proper adjustments and solved the perplexing problem. During this entire period the defendant was experimenting with different devices and techniques looking to a proper control for the emission of the "flyash." It is not the event, but the resulting injury which must be unexpected. Seiler v. Robinson, 24 N.J.Super. 559, 95 A.2d 153 (1953).

 The everyday definition of "unexpected" is "not expected," "unforeseen." It may also mean "sudden." Webster's New World Dictionary. Obviously, we must turn to definitions of "expected" in order to clearly understand the meaning of "unexpected." To "expect" often carries a connotation of more than merely waiting for, and implies some ground or reason for considering the event as likely to happen. Orr v. State, 40 Ala.App. 45, 111 So.2d 627, 635 (1958). A New York court says that "expect" means to look forward to as certain or probable. Isbrandtsen Co. v. Lyncroft Grain Corp., 8 Misc.2d 521, 166 N.Y.S.2d 721, 725. Pennsylvania teaches that an "expectation" is more than a bare hope and it implies a high degree of certainty that a future event will occur. Reed v. Philadelphia Transp. Co., 171 Pa. Super. 60, 90 A.2d 371, 373, 33 A.L.R.2d 1166 (1952). The Ohio Court of Appeals, the state in which the insurance contracts originated, says that the word "expect" means "[t]o look for (Mentally); to look forward to for something that is believed to be about to happen or to come." Kronenberg v. Whale, 21 Ohio App. 322, 153 N.E. 302, 308 (1926). The Ohio court then goes on to say, "We think that whatever is reasonably expected is in a substantial sense *reasonably certain*." I must assume that the plaintiff when using this language in an Ohio contract, had in mind this definition. The Ninth Circuit defines the word to mean "to look forward to as certain or probable." Petroleum Export Corp. v. Kerr S.S. Co., 32 F.2d 969 (9th Cir. 1929). Although the word "expect," and

its derivatives, have been defined by the courts in different ways, I can and do find without hesitancy that the damage caused by the actions of the defendant, in this case, does not fall within the limits of any such definition. It cannot be said that there was a "high degree of certainty" that the "flyash" would cause the damage, nor that defendant "considered the event as likely to happen." The record is crystal clear that no one anticipated the difficulties which were encountered in converting the electric boilers to those which would utilize sawdust. The problem was entirely unforeseen at the time when the mill was first placed in operation. Commonsense dictates a finding that the emission of the "flyash" on the opening, and for at least some time thereafter, was entirely unexpected. The total damage suffered was caused by spasmodic emissions of the substance. Plaintiff makes no claim that defendant should have shut down its plant after notice of the damage. As previously mentioned, the plaintiff encouraged the defendant to continue operations until the defects were remedied. If the language of the policy is ambiguous as to whether coverage is afforded for the entire damage or only a part thereof, the ambiguities must be resolved against the plaintiff. At this point, it is well to call specific attention to the language of the endorsement which defines "occurrence" to mean "a continuous or repeated exposure to conditions which unexpectedly cause injuries to persons or tangible property * * *." A liberal construction of this language in favor of the assured, justifies a finding that the insurance company, when drafting the contract, had in mind a series of events similar to those presented by this record.

Cases such as Portaro v. American Guarantee & Liability Ins. Co., 210 F.Supp. 411 (N.D. Ohio E.D.1962); Aerial Agricultural Serv. of Montana, Inc. v. Till, 207 F.Supp. 50 (N.D.Miss. 1962); Labberton v. General Cas. Co. of America, 53 Wash.2d 180, 332 P.2d 250 (1958), cited by defendant, are helpful,

but certainly not controlling. The language of the insurance policies there under scrutiny, and the facts in the respective cases, differ from the facts and policies before me.

Other theories advanced and authorities cited by the respective parties, have received my attention. I do not believe that a detailed analysis of the same are indicated.

I find in favor of the defendant and against the plaintiff on the issues as stated in the pre-trial order.

The agreed facts in the pre-trial order and this opinion shall serve as my findings and conclusions. Additional findings may be requested. An appropriate judgment shall be prepared and presented by counsel for defendant.