Hubert Allen DAVIS and Linda Joyce Davis, Plaintiffs–Appellants,

v.

WAL–MART STORES, INC., Defendant–Appellee.

No. 91–3873.

United States Court of Appeals, Eleventh Circuit.

Aug. 11, 1992.

Joseph H. Williams, Troutman, Williams, Irvin, & Green, P.A., Winter Park, Fla., for plaintiffs-appellants.

Vincent Michael D'Assaro, Cameron, Marriott, Walsh & Hodges, P.A., Orlando, Fla., for defendant-appellee.

Before COX, Circuit Judge, CLARK* and WELLFORD**, Senior Circuit Judges.

WELLFORD, Senior Circuit Judge:

The plaintiffs, Hubert Allen Davis and his wife, Linda Joyce, appeal from the district court's denial of their motion for a new trial on damages issues in this personal injury case which they filed against the defendant, Wal–Mart Stores, Inc. They also assign error to the district judge's grant of the defendant's motion for directed verdict on the husband's claim for loss of future earning ability and on one of the plaintiffs' theories of negligence. Plaintiffs also complain about defense counsel's mention of plaintiffs' insurance coverage in violation of the district court's *in limine* instructions. We AFFIRM in part and REVERSE in part for the reasons indicated.

On Memorial Day in 1988, the plaintiffs drove to a Wal–Mart Store to purchase a portable swimming pool, which they found located on a top shelf in the toy section, approximately six feet from floor level. Mr. Davis reached up to examine the container to determine its approximate weight. Believing that the swimming pool container was too heavy to be lifted without help, the plaintiffs sought assistance from store personnel. Nearby a card warned customers to seek assistance in removing the heavy pools from the top shelf.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Harry W. Wellford, Senior U.S. Circuit Judge, for the Sixth Circuit, sitting by designation.

A Wal–Mart employee, Christopher New, used a ladder to help retrieve the packaged pool. Mr. Davis positioned a shopping cart below the location of the box. New tried to remove the container from the shelf by pulling it out from among other containers. When he lifted it from the shelf, it slipped from his grasp and the container, which weighed fifty-five pounds, hit Mr. Davis on the head and shoulders. Mr. Davis felt immediate effects, but remained on his feet despite the impact.

The plaintiffs purchased the pool and left the store. The next day, Mr. Davis complained about pain and went to see a doctor, who diagnosed a muscle/tendon sprain, prescribed a muscle relaxer, and made X-rays. Another doctor also diagnosed a sprain. For a number of months, Mr. Davis sought medical treatment to relieve his persistent complaints of pain.

In January, 1990, a doctor examined the results of a Magnetic Resonance Imaging test ("MRI"), which showed an abnormality and a degenerative, herniated disc. This doctor, Dr. Gordon, testified at trial that the accident aggravated a pre-existing condition in Mr. Davis' neck, and that he had sustained a permanent impairment as a consequence. He testified further that Mr. Davis might require surgery at some future time to correct his condition. He conceded that it was possible that Mr. Davis' condition resulted from chronic degenerative disc disease or arthritis, and the persistent claimed pain was the result of the natural progression of those conditions.

The defendant's expert witness, on the other hand, testified that the MRI did not clearly show a ruptured disc. He further testified that the MRI test did reveal degenerative changes in the area of the spine, suggesting that the accident may not have caused all the pain allegedly suffered by Mr. Davis.

There was further evidence at trial dealing with Mr. Davis' alleged change in lifestyle following the accident. Mrs. Davis testified that Mr. Davis is now grumpy and can no longer play soccer with his son or do other physical activities he previously enjoyed. She noted a personality change and a diminution of their sex life. Some evidence also indicated that Mr. Davis continues to suffer from pain and to take medication, though he had not yet undergone any surgery. In contrast to this testimony, the defendant elicited evidence that tended to show other factors, such as job stress, may have been, at least in part, the source of Mr. Davis' personality changes.

At the time of the accident, Mr. Davis and his brother were partners in a family excavating business. Mr. Davis received a salary of $500.00 per week, and divided any business profits evenly with his brother. Before the injury, Mr. Davis worked in the field most of the time. Afterward, he spent most of his time in the office, while his brother did the field work. The evidence indicated that the brothers hired another person to take over some of Mr. Davis' former responsibilities. The brother testified that Mr. Davis was not able to undertake the physical labor he previously performed. In 1987, Mr. Davis earned $51,674; in 1988, $32,039; and in 1989, $54,495 from the business.

Prior to trial, the Davis' filed a motion *in limine* to exclude testimony regarding their medical insurance. Although the district court granted this motion, the defendant's counsel asked Mr. Davis at trial:

Q. Now, you paid the medical bills that have been identified here, sir, out of your own pocket?

A. Yes, sir.

Q. You had health insurance or medical insurance back at that time?

The following colloquy then occurred:

Plaintiff's counsel: Could we ask for an instruction that the jury be asked to disregard it?

Defendant's counsel: I thought, I thought the Motion was directed only to Dr. Price's records.

The Court: The jury isn't to be concerned with insurance at this time.

Defendant's counsel: I withdraw that question, your honor.

Also during trial, the district judge refused to admit a videotape offered by the plaintiffs purportedly discussing safety at Wal–Mart stores. At the conclusion of the plaintiff's case, the district court granted defendant's motion for a directed verdict on the negligent-stacking-of-merchandise theory and also on the plaintiff's claim for loss of future earning capacity.

The jury returned a verdict for Mr. Davis, finding the defendant liable for Christopher New's negligence and awarding plaintiffs $3,000 in past medical expenses and $25,000 in "future" medical expenses. The jury reduced the award by fifty percent as a result of plaintiff's contributory negligence. The district court then entered a judgment of $14,000 for Mr. Davis. The jury returned no monetary award for claims of pain and suffering, loss of past earnings or for spousal damages. The plaintiffs filed a motion for a new trial on these issues, and challenged the directed verdict on the negligent-stacking-of-merchandise theory and the claim for loss of future earning capacity. Plaintiffs appealed when the district court denied their motion for a new trial.

## I. NEW TRIAL ON DAMAGE ISSUES

■ The standard of review for a district court's disposition of a motion for new trial is abuse of discretion. *McWhorter v. City of Birmingham,* 906 F.2d 674 (11th Cir. 1990).

Florida law governs the adequacy of damages. *See Coastal Petroleum Co. v. U.S.S. Agri–Chemicals,* 695 F.2d 1314, 1319 (11th Cir.1983) (generally stating *Erie* doctrine).

The test to be applied in determining the adequacy of a verdict is whether a jury of reasonable men could have returned that verdict. This test is simply stated but may be difficult to apply in a particular case. We are aware of the difficulties and frustrations courts experience in the search for the mythical jury of reasonable men. The appellate court must be ever alert against the temptation to substitute its 'verdict' for that of the jury. On the other hand, we must not refuse to act to relieve the injustice of either a grossly inadequate or excessive verdict.

*Griffis v. Hill,* 230 So.2d 143, 145 (Fla. 1969).

Absent a showing that the verdict was induced by prejudice or passion, a misconception of the law or the evidence, or a failure by the jury to consider all of the elements of damage involved, an appellate court should assume that the jury considered all elements of damage.

*Harrison v. Housing Resources Management, Inc.,* 588 So.2d 64, 66 (Fla.Dist.Ct. App.1991). A reviewing court must "acknowledge the deference which should be shown to the trial judge who, like the jury, heard all of the evidence." *Id.* These standards apply to Mr. Davis' claims for pain and suffering and for loss of past earnings, as well as to Mrs. Davis' claim for loss of consortium. *See Frye v. Suttles,* 568 So.2d 983 (Fla.Dist.Ct.App.1990).

■ With regard to alleged pain and suffering, Mr. Davis testified that he is never free from pain and the pain affects even his sleep. Mr. Davis' co-workers testified that they have observed Mr. Davis in pain when he performs certain physical tasks. Mrs. Davis corroborated some of this testimony.

The plaintiffs maintain that the jury found for them on the issue of medical causation because it awarded over $20,000 for past and future medical costs. They complain that the damage awards for some elements of plaintiffs' cause of action, and the denial of any award for pain and suffering and for other elements, were inconsistent, and they contend they should have a new trial on the latter claims.

The defendant answers the plaintiffs by arguing that the jury did not find for the

plaintiff on medical causation. The defendant points to evidence to support the conclusion that Mr. Davis' pain and suffering, if any, may have been caused by other factors. Defendant also argues that there is a deferential standard of review and that the jury simply did not believe Mr. Davis' complaints about pain.

■ There is a strong presumption of correctness afforded jury awards. In this case, we AFFIRM the district court's denial of the motion for a new trial. The jury's verdict does not conclusively indicate that it accepted a causal relationship between the accident and the complaints. There was evidence that the pain might have been caused by a pre-existing degenerative condition. Additionally, the jurors might not have accepted the testimony of the plaintiffs' witnesses in this regard.

With regard to loss of consortium, Mrs. Davis claims that she has to do more work at home as a result of Mr. Davis' injury. She further testified that sexual relations with Mr. Davis are way "down." Mrs. Davis attributed these problems to the accident.

In contrast to her other testimony, Mrs. Davis also stated that Mr. Davis was working harder at the office and that he was staying at work later than before the accident. Mr. Davis and his brother admitted that the family business was more hectic than it had been in the past. Dr. Price testified that he had treated Mr. Davis for stress prior to the accident. These facts would support a jury conclusion that Mr. Davis' problems may have been brought about by causes other than the Wal–Mart accident. The jurors simply may not have believed the plaintiffs in all respects. A loss-of-consortium plaintiff is not entitled to a new trial if the evidence is "insubstantial and rebutted." *Hagens v. Hilston,* 388 So.2d 1379, 1381 (Fla.Dist.Ct.App.1980). We find no error as to Mrs. Davis' claim.

Mr. Davis also contends that the jury's failure to award him damages for loss of earnings warrants the grant of a new trial.

He points to evidence that he missed, at least, two weeks of work. The defendant counters by maintaining that Mr. Davis failed to offer evidence on the monetary value of any weeks away from his work caused by the episode in question. The defendant avers that Mr. Davis, in fact, lost no income during the period away from work. The jury's verdict is supported by evidence that Mr. Davis did not suffer any actual monetary loss by virtue of the accident, nor did Mr. Davis present sufficient evidence to indicate any monetary value to his claimed inability to work during the relevant period. We are satisfied that denial of plaintiffs' motion for a new trial was not reversible error.

## II. FUTURE EARNING CAPACITY

■ This court reviews the grant of a motion for directed verdict using the same standard used by the trial court. *MacPherson v. University of Montevallo,* 922 F.2d 766, 770 (11th Cir.1991). A district court may grant a motion for directed verdict

> only when without weighing the credibility of witnesses, the facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not arrive at a contrary verdict; where substantial conflicting evidence exists in the record, a directed verdict is improper.

*Johns v. Jarrard,* 927 F.2d 551, 557 (11th Cir.1991).

At the close of the plaintiffs' evidence, the district judge directed a verdict in favor of the defendant on Mr. Davis' claimed loss of future earning capacity. Mr. Davis alleges that this action was error because there was sufficient evidence on this issue to create a jury question. Mr. Davis' brother testified that Mr. Davis could not perform the physical duties previously undertaken, and that Mr. Davis' permanent impairment forced the company to hire another person to do his former job. In general, Mr. Davis' brother indicated that Mr.

Davis produced less for the company than he did prior to the accident.

The defendant argues that Mr. Davis' earnings have actually increased since the accident, that he continues to be paid the same salary, and has the same share of the profits, which profits have increased since Mr. Davis now works in the office. Based upon this evidence, the trial judge directed a verdict for the defendant because he found that the plaintiffs had only proved that Mr. Davis suffered an impairment that prevented him from working in the field. This impairment, the district court concluded, had not translated into any monetary loss. The record really does not support this conclusion.

■ Under Florida law, a trial court should instruct the jury on future loss of *earning capacity* when "there is evidence of a permanent injury." *Hatfield v. Wells Brothers, Inc.,* 378 So.2d 33, 34 (Fla.Dist. Ct.App.), *cert. denied,* 388 So.2d 1119 (Fla. 1980). In addition, "loss of future earning capacity may be compensated even when a plaintiff has moved into a more profitable line of work." *Id. See also United States v. Jacobs,* 308 F.2d 906 (5th Cir.1962). There was evidence that the business hired another person to do part of what Mr. Davis had done.

We believe the plaintiffs' evidence was sufficiently probative of the value of Mr. Davis' services and of his reduced earning ability to create a jury question. The district court therefore erred by granting a directed verdict for the defendant.

## III. DIRECTED VERDICT ON NEGLIGENT–STACKING– OF–BOXES THEORY

■ The plaintiffs complain that the district court erred by excluding a videotape that discussed safety at Wal–Mart stores and by granting the defendant a directed

verdict on the negligent-stacking-of-boxes theory.

We conclude, however, that the district court did not err by excluding the videotape because it appears to lack relevance under the circumstances of this case. The purpose of the potentially relevant portion of the videotape was not to demonstrate methods of stacking merchandise.

The district court did not abuse its discretion by directing a verdict for the defendant on this theory because we conclude that the evidence clearly indicates that the *stacking* of the box in question did not contribute to causing the accident. Rather, it was the alleged negligence of the defendant's employee not to tell the plaintiff to stand clear, and his failure to handle the box without mishap that caused the accident. The evidence established that the box was very stable on the shelf, was not overhanging and was at a height which was in accordance with company policy. The height of the box was not shown to be a problem where a ladder was available as in this case. We find no merit, therefore, in the plaintiffs' contention.

## IV. MENTION OF PLAINTIFFS' HEALTH INSURANCE

■ The plaintiffs' last assignment of error is that the defendant's counsel improperly mentioned their health insurance to the jury in violation of the district court's grant of a motion *in limine* to exclude such evidence.

The jury's verdict, however, belies the claim that this reference to insurance prejudiced the plaintiffs' claim for medical damages. The jury awarded $3,000.00 in damages for past medical bills and $25,-000.00 for future medical bills.[1] These sums are far in excess of the $2,800.00 in past medical bills and the $10,000 to $12,-000 estimate of future medical bills proved by the plaintiffs at trial. The district

---

1. The jury reduced these sums by 50% due to the plaintiffs' comparative fault or contributory negligence.

judge's curative instruction remedied any potential prejudice caused by the defendant's brief remark. We find no prejudicial error in this respect.

For the foregoing reasons, we AFFIRM the jury's verdict. We REVERSE the grant of a directed verdict, however, on plaintiffs' claim of impaired future earning capacity. Accordingly, we REMAND for further proceedings in this regard only.