[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13503
Non-Argument Calendar

_____

D. C. Docket No. 05-22171-CV-DLG

ERIK SANCHEZ,

                                                                    Plaintiff-Appellant,

versus

DIRECTOR MCCRAY,
JOHN DOE,

                                                                    Defendants,

DR. RAYNOSA,
CARLOS MENESES,
a.k.a. Sgt. Menessa,
LOLITA FRANCIS,
a.k.a. Cpl. Mrs. Francis,

                                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 19, 2009)

Before TJOFLAT, EDMONDSON and KRAVITCH, Circuit Judges.

PER CURIAM:

This case stems from an incident during Erik Sanchez's pretrial detention at the Miami-Dade County Pretrial Detention Center ("PTDC"), during which Sanchez was transferred to a mental health ward and, after disobeying prison officers' orders, was pepper sprayed. Sanchez filed a pro se complaint against officers, employees, and individuals affiliated with the PTDC pursuant to 42 U.S.C. § 1983, alleging a variety of civil rights violations. In substance, Sanchez claimed that he was placed on suicide watch as punishment for a smoking violation, subjected to excessive force through the use of pepper spray, and denied medical treatment for ten days.

The district court granted summary judgment in favor of the defendants on all claims except the deliberate indifference to medical needs claims against PTDC Officers Carlos Francis and Lolita Meneses. These claims proceeded to trial, and the jury ruled in favor of the defendants. Sanchez now appeals various aspects of the summary judgment order and the district court's trial rulings.

## I. Facts

Following a motion for summary judgment by the defendants, the case was referred to a magistrate judge. The pleadings and accompanying exhibits establish

the following: On or about May 3, 2005, Dr. Alida Reinoso, a psychiatrist on duty on the eighth floor of the PTDC, was informed by staff that Sanchez had violated the facility's anti-smoking rules. Reinoso recommended the transfer of Sanchez to a unit that houses unstable psychiatric patients, in part because Sanchez had a heart condition that could be adversely impacted by smoking. Sanchez was transferred to such a unit on the ninth floor of the PTDC, where he was told by Meneses and/or Francis that the rules did not permit personal property in the unit. Sanchez refused to surrender his property, became agitated, argued with the officers, and refused to follow orders to enter the mental health ward. Sanchez ignored Francis's commands to calm down and instead acted aggressively. Francis deployed pepper spray, and Sanchez was immediately taken for decontamination. The psychiatric staff then evaluated Sanchez and placed him on suicide watch.

According to Sanchez, the reason he was transferred to the ninth floor and placed on suicide watch was to "punish him differently" than others for his alleged smoking. Sanchez concedes that he disobeyed the PTDC officers' orders and that after being pepper sprayed he was taken to showers for decontamination, but he alleges that the water was too hot to use. He contends that he was placed in a cell, naked, with two other inmates and, despite repeated requests, was denied medical treatment for ten days.

The magistrate judge recommended granting summary judgment in favor of the defendants on all claims except those against Francis and Meneses for deliberate indifference to medical needs.[1] The district court adopted the recommendation in its entirety, dismissed all claims except the deliberate indifference to medical needs claims against Francis and Meneses, and proceeded to trial on these claims.

Prior to and during trial, Sanchez objected to the admission of his medical records, the introduction of evidence of his prior convictions for impeachment purposes, and other alleged errors. The jury ultimately found in favor of Francis and Meneses. Sanchez filed post-judgment motions for a new trial and for judgment as a matter of law. The court denied the motions as untimely because Sanchez failed to move for judgment as a matter of law at the close of evidence and, alternatively, the court found that the motions were without merit.

Sanchez filed a notice of appeal, and the district court granted leave to proceed in forma pauperis. Sanchez submitted a transcript request form, but made no arrangements to pay for the transcripts. The court reporter returned the form. Thereafter, Sanchez filed a second request form on which he indicated that no

---

[1] The magistrate judge initially recommended granting summary judgment on all claims, but altered the recommendation after Sanchez's submission of objections and a sworn affidavit. The magistrate judge's report also recommended that the district court dismiss the claims brought against an unserved John Doe defendant, but this ruling is not challenged on appeal.

4

transcripts were required. To date, the only portion of the trial transcript that has been transmitted to this court is an excerpt containing Sanchez's testimony.

## II. Discussion

A. Standards of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005) (citation and quotation omitted). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

We review a district court's decision to admit or exclude evidence for an abuse of discretion. Walker County Sch. Dist. v. Bennett ex rel. Bennett, 203 F.3d 1293, 1295 n.6 (11th Cir. 2000). "A court determining whether the record contains substantial evidence supporting the jury verdict must view the evidence, and all logical inferences therefrom, in the light most favorable to the appellee." BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1470-71 (11th Cir. 1992). "There is a strong presumption of correctness afforded jury awards." Davis v. Wal-Mart Stores, Inc., 967 F.2d 1563, 1567 (11th Cir. 1992).

B. Claims Against Reinoso

Sanchez argued below that Reinoso violated (1) his Fourth Amendment rights by placing him on suicide watch without adequate probable cause to believe that he was smoking, and (2) his right to due process by not granting him a hearing prior to transfer. The district court granted summary judgment on the grounds that the affidavits and documentary evidence established that Reinoso did not place Sanchez on suicide watch; rather, this decision was made later by other unidentified actors.

In his appellate brief, Sanchez appears to misconstrue the district court's holding, erroneously arguing that it was based on qualified immunity. In any event, for the following reasons, we conclude that summary judgment was appropriate.

First, as to the claim that Sanchez was placed on suicide watch without adequate probable cause, Reinoso's affidavit states that she recommended Sanchez be transferred to the ninth floor, where psychiatric inmates are housed, but that she did not order Sanchez to be placed on suicide watch. Moreover, Francis's affidavit states that after she pepper sprayed Sanchez, he "was examined and seen by psychiatric staff, which concluded that he should be placed on suicide watch . . . ." The defendants therefore submitted evidence sufficient to establish that Reinoso

did not place Sanchez on suicide watch. Sanchez did not provide any evidence to rebut these statements. Thus, summary judgment was appropriate.

Turning to the due process claim, we conclude that Sanchez did not have a due process right to a hearing prior to transfer to the ninth floor. Prison officials have full discretion to control conditions of confinement, including prisoner classification. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). There is no constitutionally protected liberty interest in being housed in a certain prison or a certain section within a prison. Meachum v. Fano, 427 U.S. 214, 224 (1976); Parker v. Cook, 642 F.2d 865, 876 (5th Cir. 1981).[2] Even when a state creates a liberty interest in being assigned to a certain type of unit within a prison, other concerns may justify transferring a prisoner. Parker, 642 F.2d at 876. Prison officials may not arbitrarily remove prisoners from units in which they have protected interests in residing, but "a transfer from one unit of general population to a comparable unit does not invoke the due process clause." Id.

In this case, the evidence shows that Sanchez was not arbitrarily transferred. Prison staff informed Reinoso that Sanchez was smoking, which, according to Reinoso, was (1) in violation of prison rules, (2) was particularly dangerous to Sanchez because of his heart condition, and (3) was dangerous to the prison staff

---

[2] Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on this court. See Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

and general prison population because it involved items that could be used to start a fire.  It was therefore appropriate to temporarily transfer Sanchez to another floor where he could be more closely monitored.  Furthermore, there is no evidence that the conditions on the ninth floor were materially different than those on the eighth floor.  Because Sanchez failed to establish a due process right to a hearing prior to transfer, summary judgment was appropriate.

## C.  Claims Against Meneses and Francis

Sanchez argues that the district court erred in granting summary judgment in favor of Meneses and Francis on his due process, excessive force, and failure to supervise claims because (1) Francis and Meneses violated Sanchez's due process rights by placing him on suicide watch, (2) Francis used excessive force by pepper spraying Sanchez, and (3) Meneses failed to adequately supervise Francis by permitting her to unlawfully pepper spray Sanchez.

First, as noted above, the documentary evidence established that Francis, Meneses, and Reinoso did not order Sanchez placed on suicide watch.  There is no evidence, contrary to Sanchez's unsupported assertions, that the individual who ordered Francis and Meneses to place Sanchez on suicide watch lacked the authority to so order.  Thus, Sanchez's argument that Francis and Meneses should have disobeyed this order lacks merit.  The district court therefore did not err in

8

granting summary judgment on the due process claim.

Second, to determine whether a jailer's use of force is excessive, this court considers the following factors: (1) "the need for force"; (2) "the relationship between that need and the amount of force used"; (3) "the extent of the resulting injury"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (citations and quotation marks omitted). "When we consider whether the jailers' use of force was excessive, we must 'give a wide range of deference to prison officials acting to preserve discipline and security.'" Id. (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)).

Francis and Meneses's affidavits state that after Sanchez was told to surrender his personal belongings he became agitated, threw his bags on the floor, waved his arms wildly, clenched his fists, and at one point stated, "You're going to have to kill me. I am a black belt." According to Francis, Sanchez ignored her orders and behaved in a threatening manner. Francis pepper sprayed Sanchez, who was then immediately handcuffed and removed from the scene. Sanchez disputes that he acted in a threatening manner, but in his affidavit admits that he refused to

9

comply with the officer's orders. "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Bennett, 898 F.2d at 1533. Because "[p]epper spray is an accepted non-lethal means of controlling unruly inmates," Danley, 540 F.3d at 1307, Francis did not use excessive force by deploying pepper spray in order to gain control of Sanchez and force him to comply with her orders.

Finally, because there was no genuine issue of material fact as to whether Francis used excessive force by pepper spraying Sanchez, the district court correctly granted summary judgment in favor of Meneses on the failure to supervise claim, which was premised upon Francis's alleged use of excessive force.

D. Alleged Trial Errors

Sanchez raises a number of alleged errors that occurred during the trial or are dependent upon review of evidence adduced at trial, including that the district court improperly: (1) overruled Sanchez's objection to the admission of his medical records; (2) admitted evidence of Sanchez's prior convictions; (3) refused to admit evidence that Sanchez wished to use to impeach Francis; (4) denied Sanchez the opportunity to object to trial rulings; and (5) denied Sanchez's post-verdict motion for judgment as a matter of law.

10

First, we conclude that the district court properly overruled Sanchez's objection to the admission of his medical records. Sanchez alleged that after he was pepper sprayed, he did not receive treatment for ten days and that, as a result, he now suffers permanent eye damage. By making these allegations, Sanchez put his medical status at issue, and thus his medical records were admissible as evidence. See Johnson v. Alabama, 256 F.3d 1156, 1179 (11th Cir. 2001) (a party waives his right to claim privilege over communications when he puts the subject of those communications at issue).

Next, we hold that the district court properly admitted evidence of Sanchez's prior convictions. Sanchez's argument as to this issue is unclear, but he appears to allege that (1) some of the convictions were over ten years old, and (2) even though the court ruled before trial that only some of the convictions would be admissible, it permitted the defendants at trial to introduce all four of Sanchez's convictions. A review of Sanchez's testimony, however, reveals that all of the convictions admitted at trial occurred within ten years of trial, and thus were admissible for impeachment purposes under Fed. R. Evid. 609(b). Even if the district court initially ruled that only some of those convictions could be admitted at trial, Sanchez "opened the door" to the admission of all of the convictions by testifying on direct examination that he was not guilty of prior crimes and only "pled guilty

11

out of convenience." See United States v. Vigliatura, 878 F.2d 1346, 1351 (11th Cir. 1989) (Counsel "opened the door" to cross-examination regarding his client's prior arrests "by questioning him about prior charges and convictions (some of which were clearly inadmissible under Rule 609)." (emphasis omitted)).

Finally, because the remaining issues raised by Sanchez require examination of the trial record, it was his duty to submit copies of the relevant transcripts to this court. See Fed. R. App. P. 10(b) (specifying the appellant's duty to transmit copies of the transcript to the reviewing court); Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002) (applying the rule to a pro se litigant). Where "the cost of the transcript is to be paid by the United States under the Criminal Justice Act, the [appellant's transcript request form] must so state." Fed R. App. P. 10(b)(1)(A)(i). "[T]he burden is on the appellant to ensure the record on appeal is complete, and where a failure to discharge that burden prevents us from reviewing the district court's decision we ordinarily will affirm the judgment." Selman v. Cobb County Sch. Dist., 449 F.3d 1320, 1333 (11th Cir. 2006).

Sanchez only provided this court with copies of his testimony. He did not meet his obligation to provide this court with the other relevant portions of the trial transcripts. Sanchez filed a transcript request form on July 2, 2008, in which he specified that he wished to receive the trial transcripts, but he did not select a

12

method of payment. Notably, one of the boxes beneath the "Method of Payment" section was labeled "Criminal Justice Act" and explained that by checking that box, the undersigned is "requesting authorization for government payment of transcript." Sanchez, however, did not select this box, and the form was therefore returned to him for failure to select a payment method. On November 21, 2008, Sanchez filed a second transcript request form, this time checking "No transcript is required for appeal purposes." Consequently, we have not received the trial transcript, cannot review the alleged trial errors, and accordingly affirm the rulings of the district court as to these remaining issues. See Selman, 449 F.3d at 1333.

## III. Conclusion

For the reasons set forth, the rulings of the district court are hereby affirmed.

**AFFIRMED.**

13