**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0980n.06

Nos. 09-4000/10-4457/10-4458/10-4497

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Sep 07, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| LINDA CHAPMAN, Administrator of the Estate of John Chapman, Deceased, | ) ) ) |
| Plaintiff - Appellee, | ) ) |
| v. | ) ON APPEAL FROM THE UNITED ) STATES DISTRICT COURT FOR THE ) SOUTHERN DISTRICT OF OHIO |
| MILFORD TOWING & SERVICE, INC.; JOHNNY WHITAKER, | ) ) OPINION |
| Defendants - Appellants. | ) ) |

Before: BATCHELDER, Chief Judge; NORRIS and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge. Milford Towing & Service, Inc. (Milford Towing), and its employee, Johnny Whitaker, appealed the jury's verdict against them in this negligence case, along with the district court's orders awarding prejudgment interest on a portion of the damages award. Milford Towing's insurer, Motorists Mutual Insurance Company (Motorists Mutual), its in-house attorneys, Steven Ranck and Tammy Burgoyne, and outside trial counsel, Felix Gora, appeal the district court's orders awarding prejudgment interest. The injured party, John Chapman, cross-appealed the orders on prejudgment interest.[1] For the reasons explained below, we AFFIRM.

---

[1] During the pendency of these appeals, Chapman died and the court substituted as a party Linda Chapman, the administrator of Chapman's estate.

1

## I.  FACTS AND PROCEDURAL HISTORY

On the morning of November 9, 2005, John Chapman was driving an 18-wheel tractor-trailer southbound on Interstate 71 near Cincinnati, Ohio.  He felt the trailer dragging, as though the rear tandems were not getting enough air pressure.  Chapman pulled off onto the right shoulder of the interstate and stopped.  He placed warning triangles along the pavement behind the tractor-trailer and contacted his dispatcher to request a serviceman to repair the vehicle.  Chapman then went into the sleeper cab to read and relax while waiting for the repairman to arrive.

Whitaker, a tow truck driver for Milford Towing, responded to the scene.  The parties hotly disputed the conversation that followed between Chapman and Whitaker.

Chapman testified that he told Whitaker he thought he had an air leak and he was waiting for a serviceman to show up to repair the truck.  When Whitaker explained that he was sent to tow the truck, Chapman replied that the truck was not his and Whitaker should not touch it until Chapman contacted his dispatcher to receive approval for a tow.  Chapman then returned to the truck cab to call the dispatcher and organize his personal effects in the event the vehicle was towed.

Whitaker testified that Penske Leasing, the owner of the tractor Chapman was driving, dispatched him to tow the tractor-trailer, and upon arrival, Whitaker parked his tow truck about five feet in front of Chapman's tractor.  Chapman told him that the truck would not run.  Whitaker denied that Chapman stated he needed to contact his dispatcher to confirm whether the tractor-trailer should be towed.  Whitaker told Chapman to watch out and move out of the way so that he could hook up the tow truck to the tractor-trailer.  Chapman moved to a grassy area on the passenger side of the truck, but after that Whitaker did not keep track of Chapman's whereabouts.  He did not know that Chapman climbed back into the tractor's cab.

2

Whitaker testified that he hooked the tow truck to the tractor-trailer and raised the front end of the tractor approximately twelve to eighteen inches off the ground. Whitaker then got under the tractor and attached chains so that the truck's axle would not move during towing. This process took fifteen to twenty minutes. Whitaker then walked down the passenger side of the tow truck, rounded the front, and walked down the driver's side toward the rear of the tow truck to activate the controls. Before Whitaker got to the back of his truck, he saw the driver's door of Chapman's tractor open. Chapman started climbing out of the cab, but he lost his balance and fell mid-air into the passenger side of a box truck passing by in the right lane of the interstate.[2] Chapman suffered serious injuries to his right leg, several vertebrae, and ribs. The leg injury required amputation above the knee.

Chapman testified that he checked the tractor's mirrors and waited for cars to pass before starting to climb out of the cab. As he lowered his foot to the bottom step, he "got the sensation of the truck moving" and lost his balance. The defense challenged Chapman's trial testimony as in conflict with his prior account. At deposition, Chapman said he felt the tractor being raised as he started to climb out of the truck, he felt a jerk, and he was shaken or thrown off the truck as he was climbing down. The defense contended that Chapman changed his testimony because Chapman learned after his deposition that Whitaker had already raised up the tractor by the time Chapman fell. The defense also contended that Chapman was wearing sandals when he climbed out of the truck cab, even though Chapman testified he was wearing tennis shoes.

Three experts testified at trial concerning a tow truck operator's standard of care: two for plaintiff and one for the defense. The experts generally agreed on the steps a tow truck operator must

---

[2]The box truck was owned by Diller Medical, Inc. (Diller Medical), and was driven by Ricky Armstrong. Early in the litigation, Chapman stipulated to the dismissal without prejudice of these two defendants, reserving the right to refile suit against them within one year.

take to insure the safety of individuals during the process of towing a vehicle. One expert told the jury that the standard of care required Whitaker to ask Chapman if he needed to get back into his truck for anything before the hook-up and lift began. Chapman's experts opined that Whitaker violated the standard of care. Milford Towing's expert testified that Whitaker did not violate the standard of care, but if the jury believed Chapman's testimony, then Whitaker breached the standard of care.

In addition to his trial testimony, Whitaker gave a statement to the police at the accident scene. He also gave a recorded telephone interview to a claims adjuster for Cincinnati Insurance Company, the insurer of Diller Medical. In neither statement did Whitaker mention that he told Chapman to move out of the way before he started the towing process. Also, in the interview with the adjuster for Cincinnati Insurance, Whitaker reported that Chapman told him the truck "wouldn't run right," which supported Chapman's version of the events.

The jury found negligence on both sides and assessed seventy-five percent comparative fault to Whitaker and Milford Towing and twenty-five percent comparative fault to Chapman. The jury awarded Chapman total compensatory damages of $2,000,513.00, which the district court reduced by twenty-five percent to $1,500,384.75.

Chapman then filed a post-judgment motion seeking pre-judgment interest on the jury award under Ohio Rev. Code § 1343.03(C)(1) (West 2009). Following discovery, the district court held an evidentiary hearing and subsequently entered an order finding that Motorists Mutual and its staff did not rationally evaluate the risks of litigation or the defendants' potential liability. The court further found that Motorists Mutual's settlement approval of only $100,000.00 at all times during the litigation, including court mediation, was not objectively reasonable, especially when defense

4

counsel informed Motorists Mutual in March 2009 that a jury verdict for Chapman could range between $750,000.00 and $1.75 million under different scenarios of comparative fault. The court ruled that prejudgment interest would run from May 10, 2006, the date Chapman gave the defendants and their insurer notice of the claim in accordance with the statute.

In a supplemental order, the district court determined that the portions of compensatory damages representing medical loss in the amount of $280,514.00 and lost wage earnings in the amount of $430,749.00 "are present and accrued damages." The two amounts added together totaled $711,263.00. The court reduced that amount by twenty-five percent and awarded pre-judgment interest on $533,447.25. The court further found that the portion of compensatory damages representing non-economic loss of $1,289,250.00 constituted future damages not subject to pre-judgment interest.

## II. ANALYSIS

The defendants raise four challenges on appeal, and Chapman cross-appeals, alleging one error in the calculation of prejudgment interest. Having carefully reviewed the record, we conclude that the district court did not commit error when it refused to give Ohio Jury Instruction § 405.05 on intervening and superseding cause or when the court refused to give a curative instruction about a defense witness's brief mention of "Cincinnati Insurance." The court properly admitted into evidence Whitaker's recorded telephone interview with the claims adjuster for Cincinnati Insurance because it was the statement of a party opponent and a business record. Finally, the court did not err in granting or calculating pre-judgment interest.

**A. Requested instruction on intervening and superseding cause**

*1. Standard of Review*

In a diversity case, state law determines the substance of jury instructions, but federal law governs the standard of review and any questions concerning the propriety of the instructions. *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). We review a district court's refusal to give a requested jury instruction for an abuse of discretion. *Id.* An "abuse of discretion" is defined "as 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). We review the jury instructions as a whole to decide whether the instructions as given adequately informed the jury of the relevant considerations and provided a basis in law to assist the jury in reaching its decision. *Id.* The district court's refusal to give an instruction is reversible error if the instruction was a correct statement of the law, the instruction was not substantially covered by other charges, and the failure to give the instruction impaired the requesting party's theory of the case. *Id.* We will reverse only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial. *Id.*

*2. Defendants have not shown instructional error*

In their proposed jury instructions, Milford Towing and Whitaker requested Ohio Jury Instruction § 405.05(4) on intervening and superseding cause as follows:

> INDEPENDENT SUPERSEDING CAUSE. Causal connection is broken when another's negligent act, which could not have been reasonably foreseen and is fully independent of the defendants' negligence, intervenes and completely removes the effect of the defendants' negligence, and becomes itself the proximate cause of the injury.

6

After hearing the parties' arguments and considering options during the jury charge conference, the district court decided to include only the following language as part of its proximate cause instruction:

> There may be more than one proximate cause. The fact that some other cause combined with the negligence of a defendant in producing an injury does not relieve the defendant from liability unless it is shown such other cause would have produced the injury independently of the defendant's negligence.

The court also instructed the jury on reasonable foreseeability and followed with an instruction on comparative negligence.

The district court explained to defense counsel that the court's instructions would allow him to argue to the jury that Chapman's negligence was an independent act that caused his own injuries, regardless of anything done by the defendants, and that Chapman's injuries would not have occurred but for Chapman's own negligence. The court was concerned that adding any further language might confuse the jury.

Although the instruction requested by the defense was generally a correct statement of the law, we are not convinced that the district court was required to give the instruction on the facts of this case. The Ohio Supreme Court has held that "the test to be used to determine whether the intervening act was foreseeable and therefore a consequence of the original negligent act or whether the intervening act operates to absolve the original actor" is "'whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor.'" *Leibreich v. A.J. Refrigeration, Inc.*, 617 N.E.2d 1068, 1071 (Ohio 1993) (quoting *Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 819 (Ohio 1983)). The term "independent" is defined as "the

absence of any connection or relationship of cause and effect between the original and subsequent act of negligence." *Id.* at 1071–72. "The term 'new' means that the second act of negligence could not reasonably have been foreseen." *Id.* at 1072 (emphasis omitted) (internal quotation marks omitted). Therefore, whether an intervening act breaks the causal connection between negligence and injury is dependent upon whether the intervening cause was reasonably foreseeable to the one who was initially negligent. *Id.* The "intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." *Berdyck v. Shinde*, 613 N.E.2d 1014, 1025 (Ohio 1993); *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817, 821 (6th Cir. 1981) (noting, under Ohio law, that an intervening cause must produce the result without the cooperation of the original wrong). *See also Potter v. Ford Motor Co.*, 213 S.W.3d 264, 274 (Tenn. Ct. App. 2006) (observing that "the intervening cause doctrine is inapplicable where the alleged intervening, superseding cause is the plaintiff's own negligent conduct").

The district court did not err in concluding that Chapman's conduct in climbing out of the truck fell within the scope of the foreseeable risk that Whitaker's negligence created, and thus, Chapman's conduct could not be considered an intervening and superseding cause under Ohio law. That conclusion is supported by *Prosser and Keeton on The Law Of Torts*, § 44 at 303–04 (5th ed. 1984) (footnote omitted), which provides:

> Obviously the defendant cannot be relieved from liability by the fact that the risk, or a substantial and important part of the risk, to which the defendant has subjected the plaintiff has indeed come to pass. Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence. The courts are quite generally agreed that intervening causes which fall fairly within this category will not supersede the defendant's responsibility.

8

The defendants' reliance on *Thrash v. U-Drive-It Co.*, 110 N.E.2d 419 (Ohio 1953), is misplaced. In that case, a vehicle leasing company sold a used truck it owned to an automobile dealer who in turn sold the truck to a purchaser whose son was injured as the result of a defect that existed in the truck at the time the leasing company owned it. The Ohio Supreme Court ruled, under the specific circumstances of the case, that the leasing company could invoke the defense of intervening and superseding cause because it had sold the truck "as is" to the dealer and "exercised no control" with respect to the future disposition of the truck. *Id.* at 423. Not only are the facts of *Thrash* different from those in our case, but Ohio law on intervening and superseding cause subsequently evolved in *Cascone* and *Leibreich*, the cases we apply here.

Milford Towing also cites *Powell v. Consolidated Rail Corp.*, 510 N.E.2d 818 (Ohio Ct. App. 1986) (per curiam), but the concept of intervening and superseding cause was not the basis for the decision of the Ohio Court of Appeals in that case. There, a vehicle operator drove around lowered railroad crossing gates resulting in a collision with a train. *Id.* at 819. The driver and her daughter were killed and the driver's son was injured. *Id.* The driver's husband filed suit against the railroad alleging negligent failure to maintain the crossing gates, which historically lowered even when a train was not approaching. *Id.* at 820. The Ohio Court of Appeals affirmed a grant of summary judgment for the railroad, concluding that the driver's decision to go around the lowered gates without looking down the tracks to see if a train was coming was the sole proximate cause of the fatalities and injuries. *Id.* at 821. In this case, if the jury had found that Chapman was the sole proximate cause of his own injuries, the court's instructions and verdict forms allowed the jury to return a defense verdict, but the jury did not do so. Instead, the jury found both Whitaker and Chapman negligent and assigned greater fault to Whitaker.

9

Milford Towing also cites *Austermiller v. Dosick*, 767 N.E.2d 1248 (Ohio Ct. App. 2001), in which a physician alleged that a pharmacy's intervening and superseding negligence in filling prescriptions for a medication that ultimately caused the patient's death completely relieved the physician of liability. The court reversed a directed verdict for the physician and remanded for a jury determination of whether the pharmacy's negligence constituted an intervening and superseding cause. *Id.* at 1250–51. *Austermiller* represents the classic fact situation where a third party's negligence may intervene and supersede the negligence of the first actor. The patient's own negligence was not the issue. The case is inapplicable here because the defendants did not identify a third party whose negligence was intervening and superseding to relieve them of liability.

While the district court was not required to give § 405.05(4) under the facts of this case, the court substantially covered the defense request when it instructed the jury on proximate causation. *See Hisrich,* 226 F.3d at 449. Defense counsel repeatedly argued during closing argument that Chapman's conduct was the sole proximate cause of his injuries. Thus, the defense was not limited to arguing only comparative negligence.

The district court did not abuse its discretion in crafting the instructions or in refusing to give the entirety of § 405.05(4). We affirm on this issue.

## B. Curative instruction

### 1. Standard of review

We review a district court's refusal to give a requested jury instruction for abuse of discretion. *See Hisrich*, 226 F.3d at 449.

*2. The district court did not err in refusing a curative instruction*

Patrick Gratzianna, a defense expert witness, made a brief reference before the jury to "Cincinnati Insurance," the insurer of Diller Medical. During cross-examination, Chapman's counsel asked Gratzianna about various documents he reviewed:

> Q. And you also reviewed Mr. Whitaker's recorded statement, Exhibit 20. You have a copy of that, don't you?
>
> A. Yes. That was with the Cincinnati Insurance?
>
> Q. No, no, no. It was Exhibit 20 in this book. Take a look in this book.

Defense counsel did not object or request an immediate curative instruction, but later that day he submitted a written curative instruction and asked the court to include it in the court's final jury instructions:

> The Cincinnati Insurance Company was mentioned by Mr. Gratzianna. The Cincinnati Insurance Company does not insure Mr. Whitaker or Milford Towing or the Plaintiff. There is no evidence before you that the defendants or plaintiff have or do not have insurance. Whether such insurance exists has no bearing upon any issue in this case. You must not discuss or consider it for any purpose.

The district court characterized Gratzianna's comment as not "even a foul tip. It was just a loose comment that I think right now is better off left quiet without any further instruction to highlight . . . the comment itself." The court agreed to address the issue if the jury posed a question about insurance during deliberations.

Evidence of insurance is generally not admissible at trial unless it is offered for a purpose permitted by Federal Rule of Evidence 411. *See also Piontkowski v. Scott*, 582 N.E.2d 1002, 1003–04 (Ohio Ct. App. 1989). Gratzianna's brief reference to "Cincinnati Insurance" was inadvertent and unresponsive to the question Chapman's counsel asked. Counsel hurriedly diverted

11

the jury's attention from the comment and, unlike the cases on which defendants rely, defense counsel did not ask the court contemporaneously to strike the witness's remark and instruct the jury to disregard it, nor did counsel ask for an immediate curative instruction. *Cf. e.g., Kaltrider v. YMCA of Cleveland, Ohio*, 457 F.2d 768, 770 (6th Cir. 1972) (holding mistrial unwarranted where contemporaneous objection was made to single mention of insurance and court gave cautionary instruction); *Davis v. Wal-Mart Stores, Inc.*, 967 F.2d 1563, 1565–66, 1568–69 (11th Cir. 1992) (holding no prejudice occurred where party made contemporaneous objection to brief remark about insurance during closing argument and court gave cautionary instruction).

This Court held long ago that, when a trial statement concerning insurance is casual, not sought by counsel, and "is inadvertently injected into the case in the absence of bad faith, with no purpose to profit thereby, the error will be regarded as not prejudicial[.]" *Terminal Transp. Co. v. Berry*, 217 F.2d 32, 34 (6th Cir. 1954). Counsel's decision not to object to the comment immediately was apparently a matter of trial tactics. *See id.* By the time defense counsel asked the district court to add the curative instruction to the final set of jury instructions, however, "it is likely emphasis and prominence would have been given to [the comment] and greater damage done appellant than letting it alone." *Id.* at 34–35 (internal quotation marks omitted). The district court did not abuse its discretion when it decided that highlighting Gratzianna's comment to the jury might do more harm than good and the issue should be "left quiet."

## C. Admission of Whitaker's interview with Cincinnati Insurance

### 1. Standard of review

We review a contested evidentiary ruling for an abuse of the trial court's discretion. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010). Chapman urges us to review

12

this issue only for plain error, correctly alleging that defendants did not raise the precise objection to the evidence at trial as defendants now raise on appeal. The defendants did, however, object to admission of the evidence before and during trial. Because the issue is easily resolved in plaintiff's favor under the abuse-of-discretion standard, we find no need to apply the higher standard of review.

### 2. *Whitaker's prior statement was properly admitted*

At the close of Chapman's case, the district court admitted into evidence Plaintiff's Exhibit 20, the written transcript of a telephone statement Whitaker gave to Cincinnati Insurance Company on May 9, 2006. The defendants contend Exhibit 20 was inadmissible because Whitaker conceded at trial that he made the prior inconsistent statement and therefore, extrinsic proof of the statement was not admissible.

For support, the defendants rely on *Rush v. Ill. Central R.R. Co.*, 399 F.3d 705, 723 (6th Cir. 2005), and two similar cases from the Fifth Circuit, *United States v. Greer*, 806 F.2d 556, 559 (5th Cir. 1986), and *United States v. Sisto*, 534 F.2d 616, 622 (5th Cir. 1979). Those authorities are distinguishable because the witnesses who made the prior inconsistent statements in those cases were not named parties, as is Whitaker in this case. Because those courts were confronted with prior inconsistent statements of non-party witnesses, the courts applied Federal Rule of Evidence 613 to bar extrinsic evidence of prior inconsistent statements after the witnesses admitted making the statements.

In contrast, Whitaker's prior statement was admissible against him as substantive evidence under Federal Rule of Evidence 801(d)(2)(A) as the statement of a party opponent. *See Bondie v. Bic Corp.*, 947 F.2d 1531, 1534 (6th Cir. 1991). At the time of trial, Rule 613 expressly provided that "[t]his provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2)."

13

Fed. R. Evid. 613(b).[3]  Thus, the reliance by the defense on Rule 613, *Rush*, *Greer*, and *Sisto* is faulty.  *See United States v. Kenny*, 645 F.2d 1323, 1340 (9th Cir. 1981).  The defendants also argue that the statement was inadmissible because Whitaker did not write it or review it, but "when a statement is the party opponent's own statement, there is no requirement that the party opponent 'adopt' the statement."  *Bondie*, 947 F.3d at 1534.

The defense did not question the authenticity of Whitaker's statement.  The transcript was admissible under the business records exception because a Cincinnati Insurance representative testified that the document was "made at or near the time by, or from information transmitted by, a person with knowledge," the document was "kept in the course of a regularly conducted business activity," and "it was the regular practice of that business activity to make" the record.  Fed. R. Evid. 803(6)[4]; *Bondie*, 947 F.2d at 1534 (holding social worker's report about plaintiffs' statements was admissible through the combined effect of Rules 801(d)(2)(A) and 803(6)).  *See also Essex Ins. Co. v. Fid. Guar. Ins. Underwriters, Inc.*, 282 F. App'x 406, 411–12 (6th Cir. 2008) (holding transcript of witness interview taken by insurance agent fell within Rule 803(6), but no other hearsay exception applied to allow admission of the statements within the transcript as substantive evidence).  The defense further contends that Chapman did not call a proper foundation witness to testify, but Rule 803(6) provides that the requisite showing must be made through "the testimony of the custodian or other qualified witness."  Chapman called a qualified witness to testify.  Finally, the defendants contend that Rule 803(6) cannot apply because the transcript was not the business record of Milford

---

[3]Rule 613(b) was amended effective December 1, 2011.

[4]This rule was also amended effective December 1, 2011, but the language we quote was in effect at the time of trial.

14

Towing.  This contention simply miscontrues Rule 803(6), which requires only that the record be kept in the course of *a* regularly conducted business activity.  Finding no abuse of discretion in the admission of Exhibit 20, we affirm on this issue.

## D.  Pre-judgment interest award

### 1.  Standard of review

In a diversity case, state law governs the district court's decision whether to award pre-judgment interest on damages, and we review that determination for an abuse of discretion.  Fed. R. Civ. P. 59(e); *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 633 (6th Cir. 2000).  A district court abuses its discretion if it does not award pre-judgment interest that is mandatory under state law. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 328 (6th Cir. 2011).  "The Ohio courts have defined an abuse of discretion, in the context of prejudgment interest awards, as a result 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'"  *Conte*, 215 F.3d at 633 (quoted cases omitted).

### 2.  Pre-judgment interest was properly awarded

At the time of trial, the pertinent Ohio statute provided in part:

> If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed [as provided in the statute.]

Ohio Rev. Code Ann. § 1343.03(C)(1). Section 1343.03(C)(2) provides, however, that pre-judgment interest shall not be awarded on future damages found by the trier of fact.

The purposes of pre-judgment interest are to promote settlement efforts, prevent tortfeasors from delaying the ultimate resolution of cases, conserve resources, promote judicial economy, and compensate the plaintiff for the defendant's use of money which rightfully belonged to the plaintiff. *Musisca v. Massillon Cmty. Hosp.*, 635 N.E.2d 358, 360 (Ohio 1994); *Kalain v. Smith*, 495 N.E.2d 572, 574 (Ohio 1986); *Peyko v. Frederick*, 495 N.E.2d 918, 921 (Ohio 1986). According to the Ohio Supreme Court,

> A party has not "failed to make a good faith effort to settle" . . . if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.
> The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. . . . This court will not overturn a finding on this issue unless the trial court's actions indicate an abuse of discretion.

*Kalain*, 495 N.E.2d at 574 (internal citation omitted). In *Moskovitz v. Mount Sinai Med. Ctr.*, 635 N.E.2d 331, 348 (Ohio 1994), the Ohio Supreme Court clarified that the burden of proof is on the party seeking pre-judgment interest, but that party need only show a lack of good faith in settlement, not bad faith by the other party.[5]

---

[5]Although the defendants contend that a showing of dishonest purpose, conscious wrongdoing or ill will in the nature of fraud is necessary, citing *Villella v. Waikem Motors, Inc.*, 543 N.E.2d 464, 470 (Ohio 1989), the *Moskowitz* court expressly overruled language in *Villella* suggesting that a showing of bad faith is required. *Moskovitz*, 635 N.E.2d at 348.

16

### a. Pre-judgment interest was appropriate under the circumstances

After the jury returned its verdict, Chapman moved for pre-judgment interest under § 1343.03(C)(1). After considering the testimony, exhibits, and arguments presented at a hearing, as well as expert affidavits submitted by the parties, the district court found that Motorists Mutual failed to make a good faith effort to settle because it did not rationally evaluate its risks and potential liability and because it did not respond in good faith to Chapman's settlement offers.

Having carefully reviewed the factual record, we have no difficulty affirming the award of pre-judgment interest. Motorists Mutual took a firm position that Milford Towing and Whitaker were not negligent and that Chapman was solely liable for his own injuries. Despite reasonable efforts to settle the case by plaintiff and the district court, Motorists Mutual refused to move from its position and at no time during the litigation increased its settlement authority above $100,000.00. Motorists Mutual held to its position even though outside counsel advised in March 2009 that Chapman would "be able to blackboard specials of around $500,000 - $750,000," and predicted a jury verdict in the range of $1.5 to 1.75 million if the jury found the defendants solely liable. The jury verdict of $2,000,513.00, reduced to $1,500,384.75 for Chapman's share of comparative fault, was only slightly higher than defense counsel's prediction to Motorists Mutual of a best-case scenario for Chapman.

The district court found that Motorists Mutual's offer of $100,000.00 was "tantamount to no offer" or "merely a nuisance value offer." The court further found that Motorists Mutual's litigation position was not objectively reasonable. Under the circumstances presented, the court held, Motorists Mutual did not rationally evaluate the risks or its potential liability, and its response to Chapman's settlement demand was not made in good faith. The court calculated pre-judgment

17

interest from May 10, 2006, the date the defendants and Motorists Mutual were put on notice of the claim in accordance with the statute.

In making its decision, the district court was not limited to the evidence presented at the evidentiary hearing because it also could review the trial evidence, as well as its prior rulings and jury instructions, particularly when considering factors such as the type of case, the extent of injury, and the applicable law and defenses. *Galmish v. Cicchini*, 734 N.E.2d 782, 794 (Ohio 2000). Chapman was not required to negotiate against himself by unilaterally reducing his settlement offer, *id.*, and the district court properly considered the disparity between the verdict and the defense offer in deciding if the offer was made in good faith. *Strasel v. Seven Hills OB-GYN Assoc., Inc.*, 866 N.E.2d 48, 57 (Ohio Ct. App. 2007). "A trial court does not abuse its discretion in awarding prejudgment interest when, as here, a defendant 'just says no' despite a plaintiff's presentation of credible . . . evidence that the defendant . . . fell short of the standard of . . . care . . . , when it is clear that the plaintiff has suffered injuries, and when the causation of those injuries is arguably attributable to the defendant's conduct." *Galayda v. Lake Hosp. Sys., Inc.*, 644 N.E.2d 298, 304 (Ohio 1994).

### b. The district court properly calculated the amount awarded

Section 1343.03(C)(2) forbids an award of pre-judgment interest on future damages. The defense argues that the district court improperly awarded pre-judgment interest on the jury's awards of $280,514.00 for medical loss and $430,749.00 for wage loss, claiming that these awards likely included past and future damages and the jury verdict form did not include appropriate interrogatories to allow the jury to separate past from future damages.

18

Taking the medical loss first, the court instructed the jury that the parties had stipulated to the amount of the medical bills: The providers billed $371,234.00 and accepted $280,514.00 as payment in full. The jury awarded $280,514.00 as "[t]he portion of the compensatory damages that represents medical loss of Plaintiff[.]" The jury's award was for past medical loss only, so the district court properly awarded pre-judgment interest on that amount.

By comparison, the wage loss award may have included both past and future wage loss. The jury verdict form did not ask the jury to separate past wage loss from future wage loss reduced to present value. The defense asked the district court to give the jury a special interrogatory on this subject, but when the district court suggested combining categories on the verdict form to ask the jury only to specify the total amounts of damages, defense counsel acquiesced. By doing so, the defense waived its objection and invited the error it now asserts on appeal. *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 491 (6th Cir. 2008); *Buchman v. Bd. of Educ. of the Wayne Trace Local Sch. Dist.*, 652 N.E.2d 952, 961 (Ohio 1995); *Luri v. Republic Servs., Inc.*, 953 N.E.2d 859, 868–69 (Ohio Ct. App. 2011). *See also Kronenberg v. Whale*, 153 N.E. 302, 306 (Ohio Ct. App. 1926); *Kritzwiser v. Bonetzky*, No. 8-07-24, 2008 WL 4378157, at *5 (Ohio Ct. App. Sept. 29, 2008)(unpublished); *Antonoff v. Allstate Ins. Co.*, No. 03 MA 105, 2004 WL 2391540, at *2 (Ohio Ct. App. Oct. 19, 2004) (unpublished). In any event, the district court did not err in awarding pre-judgment interest on the entire wage loss amount because Chapman was no longer able to work and the damages were accrued.

Chapman cross-appeals the district court's refusal to grant pre-judgment interest on the entire jury award. We agree with the court's decision that pre-judgment interest could not be imposed on

the jury's award for non-economic loss, which represented future damages. Ohio Rev. Code Ann. § 1343.03(C)(2).

### III. CONCLUSION

For all of the reasons stated, the district court's trial rulings were properly made under the facts and law presented. Accordingly, we **AFFIRM**.